Joseph H. Kanee, Esq. (Fla. Bar # 1040922)
MARCUS ZELMAN, LLC
701 Brickell Avenue, Suite 1550
Miami, Florida 33131
(786) 369-1122 telephone
(732) 298-6256 facsimile
Joseph@MarcusZelman.com
Attorney for Plaintiff
Healthcare Ally Management of California, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC, | Case No.: |
| Plaintiff, | Complaint For: |
| v. | 1. NEGLIGENT MISREPRESENTATION; AND<br>2. PROMISSORY ESTOPPEL |
| Blue Cross and Blue Shield of Florida, Inc., | Or in the alternative- |
| Defendant. | 3. RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B) |
| | **(Jury Trial Requested)** |

Complaint

Plaintiff Healthcare Ally Management of California, LLC (hereinafter referred to as "Plaintiff" or "HAMOC") complains and alleges as against Blue Cross and Blue Shield of Florida, Inc. as follows:

## PARTIES

1.　Plaintiff, HAMOC, is and at all relevant times was a limited liability company, organized and existing under the laws of the State of California, with its principal place of business located in Los Angeles, California.

2.　Blue Cross and Blue Shield of Florida, Inc. ("Defendant" or "BCBS") is a corporation incorporated in the State of Florida, with its principal place of business located in Jacksonville, Florida.

## JURISDICTION AND VENUE

3.　The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C § 1132.  The Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

4.　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

5.　On August 31, 2022, the Hollywood Regional Surgical Center in Hollywood, Florida ("HRSC") entered into an agreement with HAMOC. The agreement provided that the Hollywood Regional Surgical Center could assign any past, present, or future unpaid or underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid bill. This included, but was not limited to, all rights to reimbursement that HRSC had been assigned by any and all of its patients, and all rights HRSC had separately, based on any interactions between HRSC and insurers. The agreement also provided that once an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill.

- 2 -
COMPLAINT

6.      On August 31, 2022, the Palm Beach Gardens Regional Surgical Center in Palm Beach Gardens, Florida ("PBGRSC") entered into an agreement with HAMOC. The agreement provided that the Palm Beach Gardens Regional Surgical Center could assign any past, present, or future unpaid or underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid bill. This included, but was not limited to, all rights to reimbursement that PBGRSC had been assigned by any and all of its patients, and all rights PBGRSC had separately, based on any interactions between PBGRSC and insurers.  The agreement also provided that once an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill.

7.      On August 31, 2022, the Miami Regional Surgery Center in Miami, Florida ("MRSC") entered into an agreement with HAMOC. The agreement provided that the MRSC could assign any past, present, or future unpaid or underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid bill. This included, but was not limited to, all rights to reimbursement that MRSC had been assigned by any and all of its patients, and all rights MRSC had separately, based on any interactions between MRSC and insurers.  The agreement also provided that once an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill.

8.      The Hollywood Regional Surgical Center, the Palm Beach Gardens Regional Surgical Center, and the Miami Regional Surgery Center are hereinafter collectively referred to as the "Medical Providers".

9.      On August 31, 2022, the Medical Providers assigned Patients'[1] underpaid/unpaid bills, including the right to file a lawsuit, to HAMOC by sending

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patients

COMPLAINT

via email a copy of Patients' underpaid/unpaid bills to HAMOC. Patients are members and enrollees of Blue Cross and Blue Shield of Florida, Inc.'s (hereinafter referred to as "Defendant") health insurance policy.

10.     This complaint arises out of the failure of Defendant to make proper payments and/or the underpayment to the Medical Providers by Defendant, of amounts due and owing now to Plaintiff for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by Defendant.

11.     Plaintiff is informed and believes based on Defendant's oral and other representations that the Patients were each an insured of Defendant, either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by Defendant.

12.     Plaintiff is informed and believes that the Patients entered into valid insurance agreements with Defendant for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and surgeries by medical practitioners and ensuring that Defendant would pay for the health care expenses incurred by the Patient.

13.     Plaintiff is informed and believes that Defendant received, and continues to receive, valuable premium payments from the Patients and/or other consideration from the Patients under the subject policies applicable to Patients.

14.     It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as Defendant, that the medical provider agrees to accept reimbursement that is discounted from the medical providers' total billed charges in exchange for the benefits of being a preferred or contracted provider.

is being withheld.  This information will be disclosed to defendant upon their request.

- 4 -

COMPLAINT

15.     Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

16.     Conversely, when a medical provider does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

17.     In such situations, the medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charged for the services rendered, because it is not providing the medical provider with in-network medical provider benefits, such as increased patient volume and direct payment obligations.

18.     The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including Defendant's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers have determined that they cannot afford to enter into such contracts. As a result, a growing number of medical providers have become non-contracted or out of network providers.

19.     Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary and allowed, all to mean an average payment for a procedure provided by similarly

COMPLAINT

situated medical providers within similarly situated areas or places of practice ("UCR").

20. The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[2]

21. Based upon these criteria, the Medical Providers' charges are usual, customary and reasonable. The Medical Providers charged Defendant the same fees that it charges all other payors. The Medical Providers' fees are comparable to the prevailing provider rates in the geographic areas to the one in which the services were provided.

22. However, Defendant has refused to pay those charges.

23. Defendant uses the term UCR in its policies.

24. When Defendant uses the term UCR for the price of a medical service, Defendant will utilize a medical bill database from Fair Health Inc. or the like to determine the exact dollar amount to be paid for a medical claim.

25. Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like Defendant and it is available for free in a more limited fashion for use by consumers.[3]

26. When a medical center like the Medical Providers is told that Defendant will be paying a claim based on UCR, the medical center expects that Defendant will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

---

[2] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (October 3, 2021), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[3] *See* fairhealthconsumer.org, (October 3, 2021), https://www. fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

27.     In the alternative and separately, Plaintiff is owed proper reimbursement in accordance with each Patient's health plan.

28.     Plaintiff is informed and believes that each Patient's health plan at issue in this litigation is a health plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). Plaintiff asserts that each Patient's health plan is an ERISA health plan ("ERISA Plan").

29.     Prior to services being rendered, the Medical Providers obtained an assignment from each Patient granting Plaintiff the right to step into the shoes of each Patient with respect to each Patient's rights under each Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for Defendant's failure to properly administer the terms of the ERISA Plan.

30.     For each Patient's claim, Defendant has waived or is estopped from asserting an anti-assignment provision were one even to exist. See Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill., 983 F.3d 435, 437 (9th Cir. 2020); Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co., 919 F.3d 266, 281 (5th Cir. 2019).[4]

31.     For each of the medical services at issue in this suit, Medical Providers sent claim forms i.e. bills to Defendant specifically stating in each case that they had received an assignment from the Patient.

32.     For each of the medical services at issue in this suit, Medical Providers spent years attempting to obtain proper payment from Defendant in accordance with each Patient's health plan.

---

[4] "This circuit has 'left open the question of whether waiver principles might apply under the federal common law in the ERISA context,' *Witt*, 772 F.3d at 1279, and we do so again today because we need not decide it." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021).

COMPLAINT

33.     For each of the medical services at issue in this suit, Medical Providers have exhausted each Patient's administrative remedies as required.

34.     Medical Providers have spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

35.     Medical Providers sent out multiple appeal letters to Defendant and any further appeals would be futile as the Medical Providers have received letters stating that Defendant's decision is final.

36.     The Medical Providers have a reputation for providing high quality care and, as a result, Plaintiff in working with Medical Providers brings this suit to obtain appropriate compensation on behalf of itself and the Medical Providers for those services which were due to the Medical Providers and are now due to the Plaintiff.

## SPECIFIC FACTS
### HRSC PATIENTS
### Patient SR

37.     On July 9, 2019 Patient received a surgical procedure from HRSC.

38.     On May 20, 2019 at 12:40 p.m., so as to determine whether or not to provide services, HRSC's employee, RJ, obtained representations from Defendant's representative, Michelle A., regarding the manner in which HRSC would be paid for services.

39.     HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

40.     Defendant represented HRSC that Patient's deductible is and was $750.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $2,500.00 and that to date for that calendar year Patient had paid $221.73.

41.     HRSC asked: does Defendant pay based on UCR for procedure codes 15830, 19318, 15836 and other similar codes within the same family?

42.     Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

43.     HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

44.     Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

45.     All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

46.     At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

47.     Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

48.     Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

49.     Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

50.     HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

51.     HRSC relied and provided services solely based on Defendant's statements, promises and representations.

COMPLAINT

52.     HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

53.     In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

54.     Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

55.     Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

56.     At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

57.     Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,615.24 made out to HRSC. Defendant again did not mention an anti-assignment provision.

58.     Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

59.     Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

60.     Defendant has made clear that HRSC has no further administrative remedies.

61.     Despite the appeals, Defendant refused to make any additional payment.

62.     Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

63.     Defendant did not in fact pay HRSC based on HRSC's billed charge.

64.     The total bill for Patient's services was $63,050.25. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,615.24.

65.     Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $63,050.25.

66.     Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

67.     Defendant processed the bill and made a payment of $1,615.24.

68.     The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

## **Patient JA**

69.     On June 28, 2019, Patient received a surgical procedure from HRSC.

70.     On June 7, 2019, so as to determine whether or not to provide services, HRSC's employees, Jim P. respectively, obtained representations from Defendant's representatives, Maria, regarding the manner in which HRSC would be paid for services.

71.     HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

72.     Defendant represented HRSC that Patient's deductible is and was $200.00 and Patient's MOOP expense is and was $2,500.00 and that to date for that calendar year Patient had paid $0.

73.    HRSC asked: does Defendant pay based on UCR for procedure codes 45378 and other similar codes within the same family?

74.    Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

75.    HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

76.    Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

77.    All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

78.    At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

79.    Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

80.    Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

81.    Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

82.    HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

COMPLAINT

83.    HRSC relied and provided services solely based on Defendant's statements, promises and representations.

84.    HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

85.    In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

86.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

87.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

88.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

89.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $950.76 made out to HRSC. Defendant again did not mention an anti-assignment provision.

90.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

91.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

92.    Defendant has made clear that HRSC has no further administrative remedies.

93.    Despite the appeals, Defendant refused to make any additional payment.

94.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

95.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

96.    The total bill for Patient's services was $21,050.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $950.76.

97.    Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $21,050.00.

98.    Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

99.    Defendant processed the bill and made a payment of $950.76.

100.    The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

### **Patient DT**

101.    On April 19, 2019, Patient received a surgical procedure from HRSC.

102.    On February 22, 2019, so as to determine whether or not to provide services, HRSC's employee, RJ. obtained representations from Defendant's representatives, Terri B., regarding the manner in which HRSC would be paid for services.

103.    HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

COMPLAINT

104.   Defendant represented HRSC that Patient's deductible is and was $750.00 and Patient's MOOP expense is and was $2,500.00 and that to date for that calendar year Patient had paid $0.

105.   HRSC asked: does Defendant pay based on UCR for procedure codes s2900, 49320, 58622, 58350, 58555, 58558, 58545 and other similar codes within the same family?

106.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

107.   HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

108.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

109.   All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

110.   At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

111.   Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

112.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

COMPLAINT

113.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

114.   HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

115.   HRSC relied and provided services solely based on Defendant's statements, promises and representations.

116.   HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

117.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

118.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

119.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

120.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

121.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $7,224.24 made out to HRSC. Defendant again did not mention an anti-assignment provision.

122.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

COMPLAINT

123.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

124.   Defendant has made clear that HRSC has no further administrative remedies.

125.   Despite the appeals, Defendant refused to make any additional payment.

126.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

127.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

128.   The total bill for Patient's services was $238,687.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $7,224.24.

129.   Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $238,687.50.

130.   Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

131.   Defendant processed the bill and made a payment of $7,224.24.

132.   The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

### **Patient RD**

133.   On April 5, 2019, Patient received a surgical procedure from HRSC.

134.   On February 21, 2019, so as to determine whether or not to provide services, HRSC's employee RJ. obtained representations from Defendant's representatives, Terri B., regarding the manner in which HRSC would be paid for services.

135.   HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

136.   Defendant represented HRSC that Patient's deductible is and was $750.00 and Patient's MOOP expense is and was $2,500.00 and that to date for that calendar year Patient had paid $0.

137.   HRSC asked: does Defendant pay based on UCR for procedure codes s2900, 49320, 58622, 58350, 58555, 58558, 58545 and other similar codes within the same family?

138.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

139.   HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

140.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

141.   All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

142.   At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

143.   Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

144.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

145.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

146.   HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

147.   HRSC relied and provided services solely based on Defendant's statements, promises and representations.

148.   HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

149.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

150.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

151.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

152.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

153.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $4,111.37 made out to HRSC. Defendant again did not mention an anti-assignment provision.

154.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

155.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

156.   Defendant has made clear that HRSC has no further administrative remedies.

157.   Despite the appeals, Defendant refused to make any additional payment.

158.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

159.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

160.   The total bill for Patient's services was $195,368.73. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $4,111.37.

161.   Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $195,368.73

162.   Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

COMPLAINT

163.   Defendant processed the bill and made a payment of $4,111.37.

164.   The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

**Patient RD**

165.   On March 26, 2019, Patient received a surgical procedure from HRSC.

166.   On March 14, 2019, so as to determine whether or not to provide services, HRSC's employee Veronica obtained representations from Defendant's representatives, Amber, regarding the manner in which HRSC would be paid for services.

167.   HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

168.   Defendant represented HRSC that Patient's deductible is and was $750.00 and Patient's MOOP expense is and was $2,500.00 and that to date for that calendar year Patient had paid $0.

169.   HRSC asked: does Defendant pay based on UCR for procedure codes s2900, 57425, 52281, 58571, 58573, 58120, 88331 and other similar codes within the same family?

170.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

171.   HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

172.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

173.   All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

COMPLAINT

174.   At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

175.   Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

176.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

177.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

178.   HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

179.   HRSC relied and provided services solely based on Defendant's statements, promises and representations.

180.   HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

181.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

182.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

183.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

184.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

185.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $4,088.90 made out to HRSC. Defendant again did not mention an anti-assignment provision.

186.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

187.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

188.   Defendant has made clear that HRSC has no further administrative remedies.

189.   Despite the appeals, Defendant refused to make any additional payment.

190.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

191.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

192.   The total bill for Patient's services was $227,722.98. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $4,088.90.

193.   Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $227,722.98.

COMPLAINT

194.   Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

195.   Defendant processed the bill and made a payment of $4,088.90.

196.   The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

**Patient RI**

197.   On February 19, 2019, Patient received a surgical procedure from HRSC.

198.   On March 14, 2019, so as to determine whether or not to provide services, HRSC's employees, Maria., obtained representations from Defendant's representatives, Kasara P., regarding the manner in which HRSC would be paid for services.

199.   HRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

200.   Defendant represented HRSC that Patient's deductible is and was $2,000.00 and Patient's MOOP expense is and was $6,000.00 and that to date for that calendar year Patient had paid $0.

201.   HRSC asked: does Defendant pay based on UCR for procedure codes 63030, 22612, 22840, 20930 and other similar codes within the same family?

202.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

COMPLAINT

203.   HRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

204.   Defendant represented to HRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

205.   All of the information obtained was documented by HRSC as part of HRSC's office policy and practice.

206.   At no time prior to the provision of services to Patient by HRSC was HRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

207.   Defendant did not make reference to any other portion of Patient's plan that would put HRSC on notice of any reduction in the originally stated payment percentage.

208.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying HRSC at the UCR rate.

209.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying HRSC at a Medicare rate.

210.   HRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, HRSC could not even make itself aware of any reduction of the payment amount.

211.   HRSC relied and provided services solely based on Defendant's statements, promises and representations.

212.   HRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

COMPLAINT

213.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

214.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

215.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

216.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

217.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $7,302.88 made out to HRSC. Defendant again did not mention an anti-assignment provision.

218.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

219.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

220.   Defendant has made clear that HRSC has no further administrative remedies.

221.   Despite the appeals, Defendant refused to make any additional payment.

222.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

223.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

224.   The total bill for Patient's services was $202,866.75. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $7,302.88.

225.   Under either scenario, following the procedure, HRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $202,866.75.

226.   Following the procedure, HRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of HRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. HRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

227.   Defendant processed the bill and made a payment of $7,302.88.

228.   The amount paid was well below the billed amount, and well below the UCR amount represented during the separate oral communications between HRSC and Defendant.

## Patient JB

229.   On January 11, 2019, Patient received a surgical procedure from HRSC.

230.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

231.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

232.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

233.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

234.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $8,823.18 made out to HRSC. Defendant again did not mention an anti-assignment provision.

235.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

236.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

237.   Defendant has made clear that HRSC has no further administrative remedies.

238.   Despite the appeals, Defendant refused to make any additional payment.

239.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

240.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

241.   The total bill for Patient's services was $293,360.92. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $8,823.18.

## Patient ER

242.   On January 15, 2019, Patient received a surgical procedure from HRSC.

243.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

244.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

245.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

246. At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

247. Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,362.73 made out to HRSC. Defendant again did not mention an anti-assignment provision.

248. Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

249. Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

250. Defendant has made clear that HRSC has no further administrative remedies.

251. Despite the appeals, Defendant refused to make any additional payment.

252. Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

253. Defendant did not in fact pay HRSC based on HRSC's billed charge.

254. The total bill for Patient's services was $79,667.54. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,362.73.

**Patient AC**

255. On January 25, 2019, Patient received a surgical procedure from HRSC.

256. Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

257. Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

258.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

259.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

260.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $4,187.69 made out to HRSC. Defendant again did not mention an anti-assignment provision.

261.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

262.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

263.   Defendant has made clear that HRSC has no further administrative remedies.

264.   Despite the appeals, Defendant refused to make any additional payment.

265.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

266.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

267.   The total bill for Patient's services was $189,007.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $4,187.69.

**Patient VK**

268.   On January 24, 2019, Patient received a surgical procedure from HRSC.

269.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

COMPLAINT

270.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

271.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

272.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

273.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $195.25 made out to HRSC. Defendant again did not mention an anti-assignment provision.

274.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

275.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

276.   Defendant has made clear that HRSC has no further administrative remedies.

277.   Despite the appeals, Defendant refused to make any additional payment.

278.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

279.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

280.   The total bill for Patient's services was $17,280.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $195.25.

**Patient KN**

281.   On January 25, 2019, Patient received a surgical procedure from HRSC.

282. Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

283. Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

284. Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

285. At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

286. Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $3,469.90 made out to HRSC. Defendant again did not mention an anti-assignment provision.

287. Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

288. Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

289. Defendant has made clear that HRSC has no further administrative remedies.

290. Despite the appeals, Defendant refused to make any additional payment.

291. Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

292. Defendant did not in fact pay HRSC based on HRSC's billed charge.

293. The total bill for Patient's services was $261,073.16. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $3,469.90.

**Patient TM**

294.   On January 24, 2019, Patient received a surgical procedure from HRSC.

295.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

296.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

297.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

298.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

299.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $223.41 made out to HRSC. Defendant again did not mention an anti-assignment provision.

300.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

301.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

302.   Defendant has made clear that HRSC has no further administrative remedies.

303.   Despite the appeals, Defendant refused to make any additional payment.

304.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

305.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

COMPLAINT

306.   The total bill for Patient's services was $12,537.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $223.41.

## Patient CC

307.   On February 15, 2019, Patient received a surgical procedure from HRSC.

308.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

309.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

310.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

311.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

312.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,461.93 made out to HRSC. Defendant again did not mention an anti-assignment provision.

313.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

314.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

315.   Defendant has made clear that HRSC has no further administrative remedies.

316.   Despite the appeals, Defendant refused to make any additional payment.

COMPLAINT

317.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

318.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

319.   The total bill for Patient's services was $99,786.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,461.93.

### **Patient OZ**

320.   On February 14, 2019, Patient received a surgical procedure from HRSC.

321.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

322.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

323.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

324.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

325.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $8,436.61 made out to HRSC. Defendant again did not mention an anti-assignment provision.

326.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

327.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

328.   Defendant has made clear that HRSC has no further administrative remedies.

329.   Despite the appeals, Defendant refused to make any additional payment.

330.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

331.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

332.   The total bill for Patient's services was $208,558.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $8,436.61.

**Patient YF**

333.   On February 16, 2019, Patient received a surgical procedure from HRSC.

334.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

335.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

336.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

337.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

338.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $2,644.27 made out to HRSC. Defendant again did not mention an anti-assignment provision.

339.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

COMPLAINT

340.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

341.   Defendant has made clear that HRSC has no further administrative remedies.

342.   Despite the appeals, Defendant refused to make any additional payment.

343.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

344.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

345.   The total bill for Patient's services was $159,165.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $2,644.27.

**Patient AR**

346.   On February 21, 2019, Patient received a surgical procedure from HRSC.

347.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

348.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

349.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

350.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

351.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $732.61 made out to HRSC. Defendant again did not mention an anti-assignment provision.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

352.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

353.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

354.   Defendant has made clear that HRSC has no further administrative remedies.

355.   Despite the appeals, Defendant refused to make any additional payment.

356.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

357.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

358.   The total bill for Patient's services was $31,395.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $732.61.

**Patient MP**

359.   On March 1, 2019, Patient received a surgical procedure from HRSC.

360.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

361.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

362.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

363.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

364.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $15,186.75 made out to HRSC. Defendant again did not mention an anti-assignment provision.

365.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

366.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

367.   Defendant has made clear that HRSC has no further administrative remedies.

368.   Despite the appeals, Defendant refused to make any additional payment.

369.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

370.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

371.   The total bill for Patient's services was $317,982.90. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $15,186.75.

**Patient DM**

372.   On March 7, 2019, Patient received a surgical procedure from HRSC.

373.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

374.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

375.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

376.  At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

377.  Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $246.65 made out to HRSC. Defendant again did not mention an anti-assignment provision.

378.  Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

379.  Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

380.  Defendant has made clear that HRSC has no further administrative remedies.

381.  Despite the appeals, Defendant refused to make any additional payment.

382.  Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

383.  Defendant did not in fact pay HRSC based on HRSC's billed charge.

384.  The total bill for Patient's services was $21,050.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $246.65.

**Patient FT**

385.  On March 2, 2019, Patient received a surgical procedure from HRSC.

386.  Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

387.  Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

COMPLAINT

388.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

389.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

390.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $707.46 made out to HRSC. Defendant again did not mention an anti-assignment provision.

391.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

392.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

393.    Defendant has made clear that HRSC has no further administrative remedies.

394.    Despite the appeals, Defendant refused to make any additional payment.

395.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

396.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

397.    The total bill for Patient's services was $25,004.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $707.46.

**Patient DM 2**

398.    On March 15, 2019, Patient received a surgical procedure from HRSC.

399.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

COMPLAINT

400.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

401.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

402.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

403.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $743.83 made out to HRSC. Defendant again did not mention an anti-assignment provision.

404.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

405.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

406.   Defendant has made clear that HRSC has no further administrative remedies.

407.   Despite the appeals, Defendant refused to make any additional payment.

408.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

409.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

410.   The total bill for Patient's services was $27,810.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $743.83.

**Patient PG**

411.   On March 15, 2019, Patient received a surgical procedure from HRSC.

COMPLAINT

412. Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

413. Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

414. Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

415. At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

416. Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $16,151.56 made out to HRSC. Defendant again did not mention an anti-assignment provision.

417. Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

418. Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

419. Defendant has made clear that HRSC has no further administrative remedies.

420. Despite the appeals, Defendant refused to make any additional payment.

421. Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

422. Defendant did not in fact pay HRSC based on HRSC's billed charge.

423. The total bill for Patient's services was $310,258.45. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $16,151.56.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Patient RV**

424.   On March 16, 2019, Patient received surgical procedures from HRSC.

425.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

426.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

427.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

428.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

429.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $12,091.29 made out to HRSC. Defendant again did not mention an anti-assignment provision.

430.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

431.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

432.   Defendant has made clear that HRSC has no further administrative remedies.

433.   Despite the appeals, Defendant refused to make any additional payment.

434.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

435.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

COMPLAINT

436.    The total bill for Patient's services was $258,929.08. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $12,091.29.

**Patient NW**

437.    On March 29, 2019, Patient received a surgical procedure from HRSC.

438.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

439.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

440.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

441.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

442.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $3,561.68 made out to HRSC. Defendant again did not mention an anti-assignment provision.

443.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

444.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

445.    Defendant has made clear that HRSC has no further administrative remedies.

446.    Despite the appeals, Defendant refused to make any additional payment.

447.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

448.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

449.   The total bill for Patient's services was $198,053.73. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $3,561.68.

### Patient BF

450.   On March 28, 2019, Patient received a surgical procedure from HRSC.

451.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

452.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

453.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

454.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

455.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,900.39 made out to HRSC. Defendant again did not mention an anti-assignment provision.

456.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

457.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

458.    Defendant has made clear that HRSC has no further administrative remedies.

459.    Despite the appeals, Defendant refused to make any additional payment.

460.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

461.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

462.    The total bill for Patient's services was $134,719.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,900.39.

**<u>Patient WD</u>**

463.    On April 5, 2019, Patient received a surgical procedure from HRSC.

464.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

465.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

466.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

467.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

468.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $5,600.54 made out to HRSC. Defendant again did not mention an anti-assignment provision.

469.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

470.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

471.    Defendant has made clear that HRSC has no further administrative remedies.

472.    Despite the appeals, Defendant refused to make any additional payment.

473.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

474.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

475.    The total bill for Patient's services was $201,544.50 Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $5,600.54.

### Patient EC

476.    On April 16, 2019, Patient received a surgical procedure from HRSC.

477.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

478.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

479.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

480.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

481.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $2,116.81 made out to HRSC. Defendant again did not mention an anti-assignment provision.

482.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

483.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

484.    Defendant has made clear that HRSC has no further administrative remedies.

485.    Despite the appeals, Defendant refused to make any additional payment.

486.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

487.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

488.    The total bill for Patient's services was $82,503.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $2,116.81.

### Patient AF

489.    On April 20, 2019, Patient received a surgical procedure from HRSC.

490.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

491.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

492.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

493.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

494.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $8,593.09 made out to HRSC. Defendant again did not mention an anti-assignment provision.

495.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

496.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

497.   Defendant has made clear that HRSC has no further administrative remedies.

498.   Despite the appeals, Defendant refused to make any additional payment.

499.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

500.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

501.   The total bill for Patient's services was $304,526.75. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $8,593.09.

**Patient DM 3**

502.   On April 19, 2019, Patient received a surgical procedure from HRSC.

503.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

504.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

505.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

COMPLAINT

506.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

507.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $13,151.94 made out to HRSC. Defendant again did not mention an anti-assignment provision.

508.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

509.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

510.   Defendant has made clear that HRSC has no further administrative remedies.

511.   Despite the appeals, Defendant refused to make any additional payment.

512.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

513.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

514.   The total bill for Patient's services was $460,317.95. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $13,151.94.

**Patient MR**

515.   On February 14, 2019, Patient received a surgical procedure from HRSC.

516.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

517.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

COMPLAINT

518.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

519.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

520.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $943.55 made out to HRSC. Defendant again did not mention an anti-assignment provision.

521.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

522.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

523.   Defendant has made clear that HRSC has no further administrative remedies.

524.   Despite the appeals, Defendant refused to make any additional payment.

525.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

526.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

527.   The total bill for Patient's services was $25,468.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $943.55.

**Patient TS**

528.   On May 4, 2019, Patient received a surgical procedure from HRSC.

529.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

530.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

531.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

532.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

533.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,153.44 made out to HRSC. Defendant again did not mention an anti-assignment provision.

534.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

535.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

536.   Defendant has made clear that HRSC has no further administrative remedies.

537.   Despite the appeals, Defendant refused to make any additional payment.

538.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

539.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

540.   The total bill for Patient's services was $27,810.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,153.44.

**Patient TM**

541.   On May 3, 2019, Patient received a surgical procedure from HRSC.

542.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

543.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

544.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

545.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

546.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $570.73 made out to HRSC. Defendant again did not mention an anti-assignment provision.

547.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

548.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

549.   Defendant has made clear that HRSC has no further administrative remedies.

550.   Despite the appeals, Defendant refused to make any additional payment.

551.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

552.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

553.   The total bill for Patient's services was $27,810.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $570.73.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Patient TB**

554.    On May 9, 2019, Patient received a surgical procedure from HRSC.

555.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

556.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

557.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

558.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

559.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $5,475.40 made out to HRSC. Defendant again did not mention an anti-assignment provision.

560.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

561.    Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

562.    Defendant has made clear that HRSC has no further administrative remedies.

563.    Despite the appeals, Defendant refused to make any additional payment.

564.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

565.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

COMPLAINT

566.   The total bill for Patient's services was $242,945.18. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $5,475.40.

### Patient TM 2

567.   On May 17, 2019, Patient received a surgical procedure from HRSC.

568.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

569.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

570.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

571.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

572.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $324.43 made out to HRSC. Defendant again did not mention an anti-assignment provision.

573.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

574.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

575.   Defendant has made clear that HRSC has no further administrative remedies.

576.   Despite the appeals, Defendant refused to make any additional payment.

COMPLAINT

577.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

578.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

579.   The total bill for Patient's services was $21,100.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $324.43.

### Patient CA

580.   On May 9, 2019, Patient received a surgical procedure from HRSC.

581.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

582.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

583.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

584.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

585.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,743.44 made out to HRSC. Defendant again did not mention an anti-assignment provision.

586.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

587.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

588.   Defendant has made clear that HRSC has no further administrative remedies.

589.   Despite the appeals, Defendant refused to make any additional payment.

590.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

591.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

592.   The total bill for Patient's services was $76,707.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,743.44.

### Patient MN

593.   On May 24, 2019, Patient received a surgical procedure from HRSC.

594.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

595.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

596.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

597.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

598.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $261.05 made out to HRSC. Defendant again did not mention an anti-assignment provision.

599.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

COMPLAINT

600.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

601.   Defendant has made clear that HRSC has no further administrative remedies.

602.   Despite the appeals, Defendant refused to make any additional payment.

603.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

604.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

605.   The total bill for Patient's services was $25,888.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $261.05.

**Patient TM 3**

606.   On May 31, 2019, Patient received a surgical procedure from HRSC.

607.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

608.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

609.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

610.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

611.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $12,731.67 made out to HRSC. Defendant again did not mention an anti-assignment provision.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

612.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

613.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

614.   Defendant has made clear that HRSC has no further administrative remedies.

615.   Despite the appeals, Defendant refused to make any additional payment.

616.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

617.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

618.   The total bill for Patient's services was $202,048.45. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $12,731.67.

### Patient CF

619.   On May 31, 2019, Patient received a surgical procedure from HRSC.

620.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

621.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

622.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

623.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

624.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $7,968.07 made out to HRSC. Defendant again did not mention an anti-assignment provision.

625.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

626.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

627.   Defendant has made clear that HRSC has no further administrative remedies.

628.   Despite the appeals, Defendant refused to make any additional payment.

629.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

630.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

631.   The total bill for Patient's services was $277,788.75. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $7,968.07.

## Patient AS

632.   On June 3, 2019, Patient received a surgical procedure from HRSC.

633.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

634.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

635.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

636.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

637.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $1,644.04 made out to HRSC. Defendant again did not mention an anti-assignment provision.

638.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

639.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

640.   Defendant has made clear that HRSC has no further administrative remedies.

641.   Despite the appeals, Defendant refused to make any additional payment.

642.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

643.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

644.   The total bill for Patient's services was $144,139.50 Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $1,644.04.

**Patient RI**

645.   On June 14, 2019, Patient received a surgical procedure from HRSC.

646.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

647.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

648.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

649.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

650.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $2,023.83 made out to HRSC. Defendant again did not mention an anti-assignment provision.

651.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

652.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

653.   Defendant has made clear that HRSC has no further administrative remedies.

654.   Despite the appeals, Defendant refused to make any additional payment.

655.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

656.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

657.   The total bill for Patient's services was $110,304.25. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $2,023.83.

**Patient FT**

658.   On June 22, 2019, Patient received a surgical procedure from HRSC.

659.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

660.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

661.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

662.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

663.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $743.83 made out to HRSC. Defendant again did not mention an anti-assignment provision.

664.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

665.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

666.   Defendant has made clear that HRSC has no further administrative remedies.

667.   Despite the appeals, Defendant refused to make any additional payment.

668.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

669.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

670.   The total bill for Patient's services was $27810.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $743.83.

## **Patient VL**

671.   On June 24, 2019, Patient received a surgical procedure from HRSC.

COMPLAINT

672.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

673.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

674.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

675.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

676.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $8,031.18 made out to HRSC. Defendant again did not mention an anti-assignment provision.

677.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

678.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

679.   Defendant has made clear that HRSC has no further administrative remedies.

680.   Despite the appeals, Defendant refused to make any additional payment.

681.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

682.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

683.   The total bill for Patient's services was $279,634.30. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $8,031.18.

COMPLAINT

**Patient RB**

684.   On June 24, 2019, Patient received a surgical procedure from HRSC.

685.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

686.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

687.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

688.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

689.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $541.33 made out to HRSC. Defendant again did not mention an anti-assignment provision.

690.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

691.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

692.   Defendant has made clear that HRSC has no further administrative remedies.

693.   Despite the appeals, Defendant refused to make any additional payment.

694.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

695.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

696.   The total bill for Patient's services was $31,362.45. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $541.33.

### Patient AR

697.   On June 27, 2019, Patient received a surgical procedure from HRSC.

698.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

699.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

700.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

701.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

702.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $2,098.74 made out to HRSC. Defendant again did not mention an anti-assignment provision.

703.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

704.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

705.   Defendant has made clear that HRSC has no further administrative remedies.

706.   Despite the appeals, Defendant refused to make any additional payment.

707.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

708.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

709.   The total bill for Patient's services was $55,918.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $2,098.74.

### Patient MB

710.   On July 11, 2019, Patient received a surgical procedure from HRSC.

711.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

712.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

713.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

714.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

715.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $2,449.27 made out to HRSC. Defendant again did not mention an anti-assignment provision.

716.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

717.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

- 68 -

718.    Defendant has made clear that HRSC has no further administrative remedies.

719.    Despite the appeals, Defendant refused to make any additional payment.

720.    Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

721.    Defendant did not in fact pay HRSC based on HRSC's billed charge.

722.    The total bill for Patient's services was $161,617.44. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $2,449.27.

## Patient CF

723.    On July 6, 2019, Patient received a surgical procedure from HRSC.

724.    Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

725.    Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

726.    Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

727.    At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

728.    Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $13,560.02  made out to HRSC. Defendant again did not mention an anti-assignment provision.

729.    Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

COMPLAINT

730.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

731.   Defendant has made clear that HRSC has no further administrative remedies.

732.   Despite the appeals, Defendant refused to make any additional payment.

733.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

734.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

735.   The total bill for Patient's services was $237,352.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $13,560.02.

**Patient JR**

736.   On July 12, 2019, Patient received a surgical procedure from HRSC.

737.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

738.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

739.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

740.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

741.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $4,614.09 made out to HRSC. Defendant again did not mention an anti-assignment provision.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

742.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

743.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

744.   Defendant has made clear that HRSC has no further administrative remedies.

745.   Despite the appeals, Defendant refused to make any additional payment.

746.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

747.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

748.   The total bill for Patient's services was $304,526.75. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $4,614.09.

**Patient NC 2**

749.   On July 12, 2019, Patient received a surgical procedure from HRSC.

750.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

751.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

752.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

753.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

COMPLAINT

754.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $10,061.06 made out to HRSC. Defendant again did not mention an anti-assignment provision.

755.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

756.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

757.   Defendant has made clear that HRSC has no further administrative remedies.

758.   Despite the appeals, Defendant refused to make any additional payment.

759.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

760.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

761.   The total bill for Patient's services was $171,702.50. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $10,061.06.

**Patient MW**

762.   On July 12, 2019, Patient received a surgical procedure from HRSC.

763.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and HRSC in accordance with the terms of Patient's ERISA Plan.

764.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to HRSC.

765.   Following the medical procedure, HRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

766.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

767.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to HRSC with a check for $5,150.95 made out to HRSC. Defendant again did not mention an anti-assignment provision.

768.   Over the next couple of months, HRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and HRSC's administrative remedies.

769.   Also, during the appeal process, HRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

770.   Defendant has made clear that HRSC has no further administrative remedies.

771.   Despite the appeals, Defendant refused to make any additional payment.

772.   Based on information and belief, HRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay HRSC based on HRSC's billed charge.

773.   Defendant did not in fact pay HRSC based on HRSC's billed charge.

774.   The total bill for Patient's services was $136,641.00. Defendant did not pay HRSC based on HRSC's billed amount as Defendant's payment was $5,150.95.

## PBGRSC PATIENTS

## Patient JN

775.   On April 30, 2019 and July 9, 2019, Patient received surgical procedures from PBGRSC.

776.   On April 22, 2019 and July 1, 2019., so as to determine whether or not to provide services, PBGRSC's employee, Terri, obtained representations from

Defendant's representative, Jaoqin RT, regarding the manner in which PBGRSC would be paid for services.

777.   PBGRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

778.   Defendant represented PBGRSC that Patient's deductible is and was $4,000.00 and Patient's MOOP expense is and was $8,000.00 and that to date for that calendar year Patient had paid $0.

779.   PBGRSC asked: does Defendant pay based on UCR for procedure codes 20680, and other similar codes within the same family?

780.   Defendant represented to PBGRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

781.   PBGRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

782.   Defendant represented to PBGRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

783.   All of the information obtained was documented by PBGRSC as part of PBGRSC's office policy and practice.

784.   At no time prior to the provision of services to Patient by PBGRSC was PBGRSC advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

785.   Defendant did not make reference to any other portion of Patient's plan that would put PBGRSC on notice of any reduction in the originally stated payment percentage.

786.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying PBGRSC at the UCR rate.

787.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying PBGRSC at a Medicare rate.

788.   PBGRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, PBGRSC could not even make itself aware of any reduction of the payment amount.

789.   PBGRSC relied and provided services solely based on Defendant's statements, promises and representations.

790.   PBGRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

791.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and PBGRSC in accordance with the terms of Patient's ERISA Plan.

792.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to PBGRSC.

793.   Following the medical procedure, PBGRSC submitted a bill or UB-04 to Defendant which explicitly stated that PBGRSC had received an assignment from the Patient.

794.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

795.   Instead, Defendant processed the claim and then sent an EOB directly to PBGRSC with a check for $1,344.74 made out to PBGRSC. Defendant again did not mention an anti-assignment provision.

COMPLAINT

796.   Over the next couple of months, PBGRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and PBGRSC's administrative remedies.

797.   Also, during the appeal process, PBGRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

798.   Defendant has made clear that PBGRSC has no further administrative remedies.

799.   Despite the appeals, Defendant refused to make any additional payment.

800.   Based on information and belief, PBGRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay based on PBGRSC's billed charge.

801.   Defendant did not pay PBGRSC based on PBGRSC's billed charge.

802.   The total bill for Patient's services was $178,663.50. Defendant's payment was $1,344.74 and was not based on PBGRSC's billed charge.

803.   Under either scenario, following the procedure, PBGRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $178,663.50

804.   Following the procedure, PBGRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of PBGRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. PBGRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

805.   Defendant processed the bill and made a payment of $1,344.74.

COMPLAINT

806.   The amount paid was well below the billed amount and well below the UCR amount represented during the separate oral communications between PBGRSC and Defendant.

### Patient NL

807.   On June 6, 2019, Patient received a surgical procedure from PBGRSC.

808.   On January 29, 2019, so as to determine whether or not to provide services, PBGRSC's employee, RJ, obtained representations from Defendant's representative, Ashley P., regarding the manner in which PBGRSC would be paid for services.

809.   PBGRSC asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?

810.   Defendant represented PBGRSC that Patient's deductible is and was $750.00 and Patient's MOOP expense is and was $2,500.00 and that to date for that calendar year Patient had paid $0.00.

811.   PBGRSC asked: does Defendant pay based on UCR for procedure codes 30140,30520, 30117,31231, and other similar codes within the same family?

812.   Defendant represented to PBGRSC that for services in connection with these procedure codes, Defendant pays the UCR rate.

813.   PBGRSC asked: does Defendant use a Medicare Fee Schedule to pay for these procedure codes?

814.   Defendant represented to PBGRSC that for services in connection with these procedure codes, Defendant's payment would not be based on the Medicare Fee Schedule.

815.   All of the information obtained was documented by PBGRSC as part of PBGRSC's office policy and practice.

816.   At no time prior to the provision of services to Patient by PBGRSC was PBGRSC advised that Patient's policy or certificate of insurance was subject to

certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

817.   Defendant did not make reference to any other portion of Patient's plan that would put PBGRSC on notice of any reduction in the originally stated payment percentage.

818.   Despite representing that payment would be made at the UCR rate, Defendant knew or should have known that it would not be paying PBGRSC at the UCR rate.

819.   Despite representing that payment would not be made at a Medicare rate, Defendant knew or should have known that it would be paying PBGRSC at a Medicare rate.

820.   PBGRSC was never provided with a copy of Patient's plan by Defendant or Patient. As a result, PBGRSC could not even make itself aware of any reduction of the payment amount.

821.   PBGRSC relied and provided services solely based on Defendant's statements, promises and representations.

822.   PBGRSC took Defendant at their word and promises and provided services based solely on those promises and representations.

823.   In the alternative, pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and PBGRSC in accordance with the terms of Patient's ERISA Plan.

824.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to PBGRSC.

825.   Following the medical procedure, PBGRSC submitted a bill or UB-04 to Defendant which explicitly stated that PBGRSC had received an assignment from the Patient.

826.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

827.   Instead, Defendant processed the claim and then sent an EOB directly to PBGRSC with a check for $3,640.83 made out to PBGRSC. Defendant again did not mention an anti-assignment provision.

828.   Over the next couple of months, PBGRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and PBGRSC's administrative remedies.

829.   Also, during the appeal process, PBGRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

830.   Defendant has made clear that PBGRSC has no further administrative remedies.

831.   Despite the appeals, Defendant refused to make any additional payment.

832.   Based on information and belief, PBGRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay based on PBGRSC's billed charge.

833.   Defendant did not pay PBGRSC based on PBGRSC's billed charge.

834.   The total bill for Patient's services was $170,552.00. Defendant's payment was $3,640.83 and was not based on PBGRSC's billed charge.

835.   Under either scenario, following the procedure, PBGRSC submitted to Defendant any and all billing information required by Defendant, including a bill for $170,552.00

836.   Following the procedure, PBGRSC submitted its claims to Defendant accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of PBGRSC's claims were submitted to Defendant using CPT codes, Healthcare Common Procedure Coding System

COMPLAINT

("HCPCS"), and modifiers, as necessary. PBGRSC submitted to Defendant any and all billing information and any and all additional information requested by Defendant.

837.   Defendant processed the bill and made a payment of $3,640.83.

838.   The amount paid was well below the billed amount and well below the UCR amount represented during the separate oral communications between PBGRSC and Defendant.

### MRSC PATIENTS

### Patient JL

839.   On July 12, 2019, Patient received a surgical procedure from MRSC.

840.   Pursuant to 29 U.S.C. §1132 (a)(1)(B), Defendant has failed to reimburse Patient and MRSC in accordance with the terms of Patient's ERISA Plan.

841.   Prior to services being rendered, Patient assigned all rights to reimbursement for medical services under Patient's ERISA plan to MRSC.

842.   Following the medical procedure, MRSC submitted a bill or UB-04 to Defendant which explicitly stated that HRSC had received an assignment from the Patient.

843.   At no point in time after receiving the bill did Defendant state that there was an anti-assignment provision in Patient's ERISA Plan.

844.   Instead, Defendant processed the claim and then sent an explanation of benefits ("EOB") directly to MRSC with a check for $5.91 made out to MRSC. Defendant again did not mention an anti-assignment provision.

845.   Over the next couple of months, MRSC sent numerous appeal letters to Defendant in accordance with ERISA to exhaust all of Patient's and MRSC's administrative remedies.

846. Also, during the appeal process, MRSC was never informed that Patient's plan might have an anti-assignment provision and that Defendant would only speak or direct correspondence to the Patient.

847. Defendant has made clear that MRSC has no further administrative remedies.

848. Despite the appeals, Defendant refused to make any additional payment.

849. Based on information and belief, MRSC asserts that under the terms of Patient's ERISA Plan, Defendant is obligated to pay MRSC based on MRSC's billed charge.

850. Defendant did not in fact pay MRSC based on MRSC's billed charge.

851. The total bill for Patient's services was $64,730.94. Defendant did not pay MRSC based on MRSC's billed amount as Defendant's payment was $5.91.

## FIRST CAUSE OF ACTION

## FOR NEGLIGENT MISREPRESENTATION

852. Plaintiff incorporates by reference paragraphs 1-36, 37-52, 65-68, 69-84, 97-100, 101-116, 129-132, 133-148, 161-164, 165-180, 193-196, 197-212, 225-228, 775-790, 803-806, 807-822 and 835-838 as though fully set forth herein.

853. Defendant falsely represented to Medical Providers that payment for services would be based on UCR and not Medicare.

854. Defendant knew that any payment made to Medical Providers would not be made the UCR rate and would instead be made at the Medicare rate.

855. Defendant should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Providers would go on to provide the services.

856. Medical Providers then relied on Defendant's misrepresentation and provided the services to Patients.

857.     Medical Providers and now Plaintiff have been damaged in not receiving payment at the represented UCR rate.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

858.     Plaintiff incorporates by reference paragraphs 1-36, 37-52, 65-68, 69-84, 97-100, 101-116, 129-132, 133-148, 161-164, 165-180, 193-196, 197-212, 225-228, 775-790, 803-806, 807-822 and 835-838 as though fully set forth herein.

859.     Defendant promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of reasonable and customary and or average billed charges of similarly situated medical providers within similarly situated areas or places of practice, UCR.

860.     Medical Providers only decided to provide services because they were assured that payment would be made at the UCR rate not based on Medicare.

861.     After assuring and promising Medical Providers that payment would be at the UCR rate, Defendant should have reasonably expected that Medical Providers would then go on to provide medical services expecting that payment would be made at that rate.

862.     Medical Providers did rely on the statements, assertions and promises of Defendant and provided the medical services to the Patients.

863.     As a direct and proximate result of Defendant's misrepresentations, Medical Providers has been damaged in an amount equal to the amount of money Medical Providers should have received had Defendant paid the cost of the procedures at the reasonable and customary or market rate.

864.     The detriment suffered by Medical Providers is the amount required to make Medical Providers whole, for the time, cost and money expended in

COMPLAINT

providing medical services to Patients.  As a further direct, legal and proximate result of Medical Providers' detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Providers has been damaged due to the loss of monies expended in providing said medical services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services.

865.     In light of the material representations and misrepresentations of Defendant made to Medical Providers, and of Medical Providers' reliance on the oral representations made by Defendant and each of them, and based upon Medical Providers' detrimental reliance thereon, Defendant is estopped from denying payment and indemnification for Patient's treatment at the UCR rate.

866.     Medical Providers and now Plaintiff have been damaged in not receiving payment at the represented UCR rate.

## THIRD CAUSE OF ACTION

## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

867.     Plaintiff incorporates by reference paragraphs 1-36, 53-68, 85-100, 117-132, 149-164, 181-196, 213-774, 791-806 and 823-851 as though fully set forth herein.

868.     This cause of action is alleged by Medical Providers for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by Defendant.

869.     Medical Providers did, and now Plaintiff does, seek to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Medical Providers and now Plaintiff have standing to pursue these claims as the assignee of member/patient's rights. As the assignee of rights, Medical

COMPLAINT

Providers and now Plaintiff are a "beneficiary" entitled to collect benefits, and are the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against Defendant the party with actual control over the benefit and payment determinations with respect to Medical Providers and now Plaintiff's claims.

870.     Prior to services being rendered, the Medical Providers obtained an assignment from each Patient granting Plaintiff the right to step into the shoes of each Patient with respect to each Patient's rights under each Patient's ERISA Plan, including but not limited to the right to seek proper reimbursement for medical services as well as to seek legal redress for Defendant's failure to properly administer the terms of the ERISA Plan.

871.     For each Patient's claim, Defendant has waived or is estopped from asserting an anti-assignment provision were one even to exist. *See Beverly Oaks Physicians Surgical Ctr., Ltd. Liab. Co. v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 437 (9th Cir. 2020); *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 281 (5th Cir. 2019).[5]

872.     For each of the medical services at issue in this suit, Medical Providers sent claim forms i.e. bills to Defendant specifically stating in each case that they had received an assignment from the Patient exactly in the manner discussed in *Beverly Oaks* and *Encompass*.

873.     For each of the medical services at issue in this suit, Medical Providers spent many months attempting to obtain proper payment from Defendant in accordance with each Patient's health plan.

---

[5] "This circuit has 'left open the question of whether waiver principles might apply under the federal common law in the ERISA context,' *Witt*, 772 F.3d at 1279, and we do so again today because we need not decide it. *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021).

COMPLAINT

874.     For each of the medical services at issue in this suit, Medical Providers have exhausted each Patient's administrative remedies as required.

875.     Medical Providers have spent significant time and money in jumping through the necessary hoops in exhausting its administrative remedies under ERISA.

876.     Medical Providers sent out multiple appeal letters to Defendant and any further appeals would be futile as the Medical Providers have received letters stating that Defendant's decision is final.

877.     Defendant is a direct participant in the claims administration process as both the claims administrator and as the payor of benefits and so Defendant was responsible to Medical Provider and now is responsible to Plaintiff for proper payment in accordance with each Patient's health plan. Plaintiff has alleged for each Patient that the health plans at least obligate Defendant to pay the FCR rate which will allow for a reasonable profit for Medical Provider. Defendant did not pay in such a fashion and so Defendant's payment was improper under the terms of the health plans.

878.     As a result of the Defendant's actions, Patients have been harmed by being denied the benefits of their health plans, including by now being billed and being held responsible for the amounts that the Defendant failed to pay.

879.     By reason of the foregoing, Medical Providers, and now Plaintiff, are entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action.

## **DEMAND FOR JURY TRIAL**

880.     Plaintiff hereby demands a jury trial on all triable issues, as provided by law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

a.  For compensatory damages in an amount to be determined, plus statutory interest;

b.  For restitution in an amount to be determined, plus statutory interest;

c.  For a declaration that Defendant is obligated to pay plaintiff all monies owed for services rendered to the Patient;

d.  For attorney fees; and

e.  For such other relief as the Court deems just and appropriate

Dated: July 6, 2023                    MARCUS & ZELMAN, LLC

                                       By: /s/ Joseph H. Kanee, Esq.
                                           Joseph H. Kanee, Esq.
                                           Attorneys for Plaintiff,
                                           Healthcare Ally Management of
                                           California, LLC

COMPLAINT