## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:23-cv-61285-WPD

HEALTHCARE ALLY MANAGEMENT
OF CALIFORNIA, LLC,

      Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC.,

      Defendant.

_____/

## DEFENDANT BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.'S
## AMENDED MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

    A.    The Medical Services and Alleged Representations .............................................. 2

    B.    The Invalid Assignments ...................................................................................... 4

    C.    Procedural History ................................................................................................ 5

ARGUMENT .................................................................................................................... 7

I.      BCBSF IS NOT THE PROPER DEFENDANT AS TO CERTAIN PATIENTS ............. 7

II.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM ..................................... 8

    A.    The Plan Language Precludes Plaintiff from Relying on BCBSF's Alleged
          Waiver of its Right to Invoke the Anti-Assignment Provisions ............................ 8

    B.    The TAC Must Be Dismissed as to the State Plan Patients ................................. 11

    C.    Counts I and II Fail as to Six of the Eight Common Law Patients Because
          Their Health Plans Preclude Such Claims ........................................................... 13

    D.    Count IV Fails to State a Claim for ERISA Denial of Benefits Because
          Plaintiff Does Not Sufficiently Allege Whether the Services Provided to
          Each Patient Were "Covered Services" Under Each Patient's Health Plan ......... 14

    E.    Similarly, Count III Fails to State a Claim for Breach of Contract Because
          Plaintiff Does Not Sufficiently Allege Whether the Services Provided to
          Each Patient Were "Covered Services" Under Each Patient's Health Plan ......... 17

III.   COUNT III IS DEFENSIVELY PREEMPTED BY ERISA AS TO PATIENT Y.F. ...... 19

IV.   COUNTS III AND IV FAIL AS TO PATIENTS J.B., E.R., A.C., V.K., AND K.N.
       BECAUSE PLAINTIFF DID NOT SEEK LEAVE TO AMEND THESE
       PATIENTS' CLAIMS ........................................................................................ 20

CONCLUSION................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Abraham K. Kohl, D.C. v. Blue Cross & Blue Shield of Fla., Inc.*,
   955 So. 2d 1140 (Fla. 4th DCA 2007) ......................................................................9

*Apex Life Grp., LLC v. Misiak*,
   2008 WL 11417287 (S.D. Fla. Jan. 9, 2008) .........................................................10

*Apex Toxicology, LLC v. United Healthcare Ins. Co.*,
   2018 U.S. Dist. LEXIS 68771 (S.D. Fla. Apr. 23, 2018) .......................................16

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*,
   983 F.3d 435 (9th Cir. 2020) ...............................................................................5, 8

*Brown v. One Beacon Ins.*,
   317 F. App'x 915 (11th Cir. 2009) ...........................................................................2

*Columna, Inc. v. Cigna Health & Life Ins. Co.*,
   2020 U.S. Dist. LEXIS 21611 (S.D. Fla. Feb. 6, 2020)...........................................9

*Dea v. PH Fort Myers, LLC*,
   208 So. 3d 1204 (Fla. 2d DCA 2017) ....................................................................18

*Fla. Pediatric Critical Care v. Vista Healthplan of S. Fla.*,
   2009 WL 10667893 (S.D. Fla. Nov. 26, 2009)......................................................16

*Griffin v. AT&T Servs., Inc.*,
   2023 WL 8852925 (11th Cir. Dec. 21, 2023) .........................................................9

*Griffin v. Coca-Cola Enters., Inc.*,
   686 F. App'x 820 (11th Cir. 2017) ...........................................................................9

*Griffin v. Coca-Cola Refreshments USA, Inc.*,
   989 F.3d 923 (11th Cir. 2021) .................................................................................8

*Griffin v. Habitat for Humanity Int'l, Inc.*,
   641 F. App'x 927 (11th Cir. 2016) ...........................................................................8

*Griffin v. Publix Super Markets, Inc.*,
   2016 WL 8999466 (M.D. Fla. Aug. 2, 2016) .......................................................2, 3

*GVB MD, LLC v. Blue Cross & Blue Shield of Fla., Inc.*,
   2019 WL 5889200 (S.D. Fla. Nov. 12, 2019)..........................................................9

*Healthcare Ally Mgmt. of Ca., LLC v. Aetna Life Ins. Co.*,
   22-cv-22976-CMA (S.D. Fla.) .......................................................................5, 6, 8

*Mia. Child.'s Hosp., Inc. v. Kaiser Found. Health Plan, Inc.*,
  2009 WL 1532125 (S.D. Fla. May 29, 2009) ........................................................16

*Johnson v. Unum Provident*,
  363 F. App'x 1 (11th Cir. 2009) ...........................................................................19

*La Ley Recovery Sys-OB, Inc. v. United Healthcare Ins. Co.*,
  193 So. 3d 16 (Fla. 3d DCA 2016) .....................................................................9, 10

*Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*,
  972 So. 2d 203 (Fla. 5th DCA 2007) ...................................................................18

*Metro. Neurosurgery v. Aetna Life Ins.*,
  2023 WL 5274611 (D.N.J. Aug. 16, 2023) ...........................................................14

*Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*,
  546 F. App'x 846 (11th Cir. 2013) ..................................................................14, 15

*Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*,
  2013 WL 149356 (S.D. Fla. Jan. 14, 2013), *aff'd* 546 F. App'x 846 (11th Cir.
  2013) ...........................................................................................................14, 16, 17

*State Farm Mut. Auto. v. Gibbons*,
  860 So. 2d 1050 (Fla. 5th DCA 2003) ..................................................................12

*Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*,
  2020 WL 4227428 (M.D. Fla. July 23, 2020) .......................................................19

*Surgery Ctr. of Viera, LLC v. United Launch All. LLC*,
  2018 WL 922203 (M.D. Fla. Jan. 31, 2018)........................................................8, 9

*Titus v. Mia. Dade Cnty. Water & Sewer*,
  2017 U.S. Dist. LEXIS 13063 (S.D. Fla. Jan. 31, 2017) ......................................13

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ...........................................................................17

*Wilchombe v. TeeVee Toons, Inc.*,
  555 F.3d 949 (11th Cir. 2009) ...............................................................................2

*Wilhelm v. Fla. A&M Univ. Coll. of L.*,
  2007 WL 1482022 (M.D. Fla. Mar. 7, 2007) ........................................................13

*Worldwide Aircraft Servs. v. Anthem Ins.*,
  2022 WL 797471 (M.D. Fla. Mar. 16, 2022) ..........................................................9

**Statutes**

29 U.S.C. § 1003 .......................................................................................................7, 16

29 U.S.C. § 1144(a) ..........................................................................................19

29 U.S.C. § 1132(a)(1)(B) ................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(1) ....................................................1, 13

Federal Rule of Civil Procedure 15(a)(2) .........................................................20

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 8

Fla. Stat. § 120.68(2)(a) ....................................................................................12

Fla. Admin. Code R. 60P ...................................................................................12

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") respectfully moves the Court for the entry of an Order dismissing the Third Amended Complaint of Plaintiff Healthcare Ally Management of California, LLC ("Plaintiff" or "HAMOC") (the "TAC").[1]

## INTRODUCTION

Plaintiff again burdens this Court with a convoluted 1160-paragraph pleading riddled with legal error and imprecision, which it uses to camouflage fatal deficiencies that bar recovery in this action and which still fails to state a viable claim despite now taking *four* bites at the pleading apple. Plaintiff—a debt collection company to whom three non-party medical providers (the "Providers") allegedly assigned their bills—sues BCBSF under alternative theories. First, Plaintiff purports to plead an Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA") denial of benefits claim belonging to 27 of the 47 total alleged BCBSF members (the "Patients"),[2] based on those Patients' ERISA-governed health benefits plans (the "ERISA Plans"); and a breach of contract claim as to 19 of the 47 Patients, based on those Patients' non-ERISA health benefit plans (the "non-ERISA Plans").[3] As to eight of the 47 Patients, Plaintiff sues alternatively under common law theories of misrepresentation and estoppel based on statements BCBSF representatives are alleged to have made to the Providers, and not to Plaintiff itself. As to one Patient, Plaintiff attempts to plead only misrepresentation and estoppel claims.[4]

Plaintiff's claims fail for a host of reasons. First, BCBSF is not the proper Defendant as to certain Patients. Second, anti-assignment provisions in the Patients' Plans bar Plaintiff's claims,

---

[1] In an effort to streamline the issues before this Court, BCBSF respectfully files this Amended Motion, in which BCBSF (1) withdraws its argument that HAMOC is a debt collector under Florida law without intending to waive the argument (*see* D.E. 56 at 12–14); (2) identifies and attaches three of the five non-BCBSF members' plans (*see* Ex. A rows 2, 23, 28); and (3) raises previously unavailable arguments relating to those three non-BCBSF members.

[2] While Plaintiff has included factual allegations regarding 48 Patients, in reality, Plaintiff has failed to include any specific legal claim as to one Patient, J.L. TAC ¶¶ 1101–18, 1119, 1125, 1134, 1147. Therefore, for purposes of this Motion, BCBSF will refer to the total number of Patients as being 47 Patients, as the allegations as to Patient J.L. are extraneous and not tied to any legal claim. *Id.*

[3] Plaintiff clearly misunderstands its own pleading in alleging that 29 Patients have ERISA plans and 17 Patients have non-ERISA plans. TAC ¶¶ 28–29. Indeed, that number does not even equal the 47 Patients alleged in the TAC.

[4] As to Patient N.L, Plaintiff fails to plead either a breach of contract or ERISA claim. *Compare* TAC ¶¶ 1059–1118, *with id.* ¶¶ 1134, 1147.

1

and, critically, the Plans preclude Plaintiff from alleging that BCBSF waived its right to rely on the Plans' anti-assignment provisions. Third, Plaintiff fails to allege that the State Plan Patients administratively exhausted their claims, and, in any event, their claims are procedurally barred. Fourth, as to six Patients, Counts I and II are foreclosed by the written Plan terms, as this Court has previously ruled. Fifth, as to Count IV for denial of benefits pursuant to ERISA, Plaintiff fails to sufficiently identify whether the alleged services were covered under each Patient's Plan. Sixth, Count III for breach of contract fails for similar reasons. Plaintiff also fails to state a claim with respect to certain Patients by not accurately pleading whether the Plan is an ERISA Plan, despite being on notice of these deficiencies for months. Seventh, Count III is defensively preempted as to one Patient because that Patient is a member of an ERISA-governed Plan. Finally, Plaintiff failed to secure leave to amend its pleading to assert certain claims. Accordingly, the TAC should be dismissed with prejudice.

## BACKGROUND

As alleged in the TAC, Plaintiff brings this action pursuant to purported assignment agreements it made with three medical Providers, each of which are out-of-network with BCBSF: (1) Palm Beach Gardens Regional Surgery Center ("PBGRSC"); (2) Miami Regional Surgery Center ("MRSC"); and (3) Hollywood Regional Surgery Center ("HRSC"). TAC ¶¶ 5–7, 70, 1049, 1113. Plaintiff contends that each assignment allowed the Provider to assign its "past, present, or future unpaid or underpaid bills" to Plaintiff. *Id.* Plaintiff brings the following claims in its attempt to recover the Providers' unpaid or underpaid medical bills from BCBSF: negligent misrepresentation (Count I); promissory estoppel (Count II); and, in the alternative, breach of contract (Count III) or recovery for benefits under ERISA (Count IV).

### A.    The Medical Services and Alleged Representations

Plaintiff alleges that the Providers assigned to Plaintiff the medical bills of 47 Patients who Plaintiff contends were members of BCBSF health insurance policies.[5] *Id.* ¶ 9. Plaintiff further

---

[5] For ease of reference, BCBSF includes as Exhibit A a chart identifying for each Patient (a) member initials; (b) date(s) of service; (c) plan sponsor; and (d) relevant plan language.

Attached to the chart as sub-exhibits are the plan documents applicable to each Patient who is a BCBSF member. The Court may consider the Plan documents, annexed to Exhibit A, because the Plans are central to Plaintiff's claims and referenced throughout the TAC. *See, e.g.*, *Brown v. One Beacon Ins.*, 317 F. App'x 915, 917 (11th Cir. 2009); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted) (on a motion to dismiss, the court may consider "any documents referred to in the complaint which are central to the claims"); *Griffin v. Publix*

alleges that each Patient received one or more surgical procedures from one of the three Providers on certain dates between and including January 2019 and July 2019.

Plaintiff pleads a single ERISA claim as to 27 of the 47 Patients (the "ERISA Patients"),[6] along with alternative misrepresentation and estoppel claims as to four of those ERISA Patients. Plaintiff pleads a single breach of contract claim as to 19 of the 47 Patients (the "non-ERISA Patients"),[7] along with the alternative misrepresentation and estoppel claims as to four of those non-ERISA Patients.[8] As to one Patient, N.L., Plaintiff attempts to plead only Counts I and II.

Plaintiff's claim as to the 27 ERISA Patients is premised on the terms of each Patient's ERISA Plan. *E.g.*, *id.* ¶¶ 349, 974. Plaintiff's claim as to the 19 non-ERISA Patients is premised on the terms of each Patient's non-ERISA Plan. *E.g.*, *id.* ¶¶ 1011, 1114.

As to the eight Patients with alternative negligent misrepresentation and promissory estoppel claims, the allegations in the SAC track a virtually identical 38- to 39-paragraph format. *Id.* ¶¶ 40–79, 80–118, 119–58, 159–98, 199–237, 238–76, 1017–58, 1059–1100. These Patients will be referred to herein as the "Common Law Patients." Plaintiff's unifying theory underlying the Common Law Patients is that BCBSF allegedly paid the Providers at Medicare rates for the alleged surgical procedures, when BCBSF should have paid the Providers a higher "usual, customary, and reasonable," or "UCR," rate instead. *See, e.g.*, *id.* ¶¶ 19, 79.

As to the Common Law Patients, Plaintiff alleges that the Providers engaged in the following colloquy with BCBSF representatives before each Patient's surgical procedure:

- "On [date(s)], so as to determine whether or not to provide services, [Provider's] employee, [initials], obtained representations from [BCBSF], regarding the manner in which [Provider] would be paid for services."
- "[Provider] asked: what is the Patient's responsibility versus [BCBSF's] responsibility for paying for medical services?"

---

*Super Markets, Inc.*, 2016 WL 8999466, at *2 n.3 (M.D. Fla. Aug. 2, 2016) ("Plaintiff did not attach the Plan to her complaint. Notwithstanding, it may be considered because it is central to the complaint and Plaintiff makes reference to it."). Here, each of the Plans is referred to and purportedly quoted throughout the TAC.

[6] These allegations track a virtually identical 18-paragraph format. *E.g.*, TAC ¶¶ 335–53, 960–78.

[7] These allegations also track a virtually identical format throughout the SAC. *E.g.*, *id.* ¶¶ 277– 96, 1101–18.

[8] The allegations related to the alternative misrepresentation and estoppel claims also track a virtually identical format throughout the SAC. *E.g.*, *id.* ¶¶ 40–79, 1059–1100.

- "[BCBSF] represented [to Provider] that Patient's deductible is and was [identified amount]," identified the "Patient's Max Out of Pocket Expense," and the amount out of pocket the Patient had paid for the calendar year.
- "[Provider] asked: does [BCBSF] pay based on UCR for [identified procedure codes] and other similar codes within the same family?"
- "[BCBSF] represented to [Provider] that for services in connection with these procedure codes, [BCBSF] pays the UCR rate."
- "[Provider] asked: does [BCBSF] use a Medicare Fee Schedule to pay for these procedure codes?"
- "[BCBSF] represented to [Provider] that for services in connection with these procedure codes, [BCBSF's] payment would not be based on the Medicare Fee Schedule."

*E.g.*, *id.* ¶¶ 41–47. Following the procedure, the Providers submitted their bills to BCBSF. *E.g.*, *id.* ¶ 61. BCBSF is alleged to have sent the Providers an explanation of benefits with a check containing either no payment or payment presumably less than the amount billed. *Id.* ¶ 63. Plaintiff does not identify whether BCBSF allowed each code billed or made any coverage denials. *See id.*

### B.    The Invalid Assignments

Plaintiff alleges on information and belief that each Patient has a health benefit Plan insured by BCBSF. *Id.* ¶ 11. Plaintiff claims that each Patient has assigned its rights under their respective Plan, including all rights to reimbursement for medical services, to the respective Provider. *Id.* ¶ 30. Plaintiff does not allege that the Plans allowed such assignment, nor can it. Ex. A; D.E. 52 at 13 ("Plaintiff does not appear to dispute the existence of the anti-assignment provisions."). Rather, Plaintiff alleges that BCBSF did not inform the Providers, at certain points in time, that the Plans contained anti-assignment provisions. *E.g.*, *id.* ¶¶ 62–67. Therefore, Plaintiff contends, BCBSF "waived or is estopped from asserting an anti-assignment provision." *Id.* ¶¶ 32, 1138, 1151.

The Plan documents belie the above allegations. All but one of the 28 Plans that BCBSF has identified[9] contains broad anti-assignment provisions that prohibit the Patients from assigning their claims, as each Patient is alleged to have done here.[10] Moreover, all but four of the 25 Plans prohibit assignment absent BCBSF's "written consent," which Plaintiff fails to allege it obtained.[11]

---

[9] These 28 Plans relate to 46 of the Patients. A total of five Patients—J.A., R.I., A.C., B.F., and T.S.—are not BCBSF members. Ex. A rows 2, 6, 9, 23 28. BCBSF has not yet been able to source plans for two of the five non-BCBSF Patients, R.I. and A.C. Ex. A rows 6 & 9.

[10] The only Plan that does not contain broad anti-assignment language is the State Plan, Ex. A-1.

[11] *See, e.g.*, Ex. A-4 at GEN-1 ("The obligations arising hereunder may not be assigned, delegated or otherwise transferred by either party without the written consent of the other party . . . . Any

Critically, all but one of the BCBSF Plans expressly preclude the very waiver argument on which Plaintiff relies here.[12] *See, e.g.*, Ex. A-2 at 18-3 ("Non-Waiver of Defaults. Any failure by us at any time, or from time to time, to enforce or to require the strict adherence to any of the terms or conditions described herein, will in no event constitute a waiver of any such terms or conditions. Further, it will not affect our right at any time to enforce or avail ourselves of any such remedies as we may be entitled to under applicable law or this Contract.").

      **C.**    **Procedural History**

This matter has been pending since July 2023. After three rounds of motion to dismiss briefing, on August 28, 2024, this Court entered an order granting in part and denying in part BCBSF's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Order"), issuing the following relevant rulings:

(1) <u>Standing</u>: This Court found that Plaintiff has Article III standing at the motion to dismiss stage, inviting BCBSF to challenge standing in a future dispositive motion. D.E. 52 at 14–15.  In so doing, this Court ruled that Plaintiff adequately alleged that BCBSF waived its right to invoke the Plans' anti-assignment provisions, relying on the Ninth Circuit's decision in *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 440–41 (9th Cir. 2020), and Chief Judge Altonaga's ruling in *Healthcare Ally Management of California, LLC v. Aetna Life Ins. Co.*, 22-cv-22976-CMA (S.D. Fla.). D.E. 52 at 13–14. The Court declined to consider BCBSF's argument that the Plan language itself precludes the very waiver on which Plaintiff relies because BCBSF raised this argument in its reply brief (D.E. 44 at 5), *see infra* Section II.A, thereby not rendering a decision on this argument. D.E. 52 at 14 n.10.

(2) <u>Count IV, ERISA</u>: This Court dismissed Count IV without prejudice "to allow Plaintiff to plausibly allege facts demonstrating that the services provided to each Patient were covered services under the Plan," holding that simply alleging procedure codes is not sufficient to state a claim. D.E. 52 at 21–23. Plaintiff's TAC attempts to cure this deficiency by adding allegations about surgical procedures, along with boilerplate "ambulatory services" allegations, to each ERISA Patient's claims.

---

assignment, delegation, or transfer made in violation of this provision shall be void."); Ex. A, rows 7, 8, 10, 11, 13, 17, 18, 20, 21, 24, 27, 30, 33, 35– 37, 39, 40, 42, 43, 46.

[12] The only BCBSF Plan that does not contain this or similar language is the State Plan.

This Court also dismissed Count IV as to the two non-ERISA, government-sponsored plan members for whom Plaintiff erroneously pleaded ERISA claims, Patients S.W. and P.G. *Id.* at 23. Nevertheless, Plaintiff still attempts to plead an ERISA claim as to Patient S.W., who is a member of the state plan, and Patient P.G., who is a member of a government-sponsored plan. TAC ¶¶ 199–237, 523–41, 1147; Ex. A, rows 5, 20.

(3) Count III, Breach of Contract: This Court held that Plaintiff sufficiently pleaded Count III. D.E. 52 at 23–25. This Court, however, did not require Plaintiff to re-plead and allege whether the services rendered where covered services under the Plans, as it did with Count IV. *Id.*

(4) Counts I and II, Negligent Misrepresentation and Promissory Estoppel: This Court dismissed Counts I and II as to Patients S.R., D.T., R.D., N.L., and J.N. because language in their Plans prevents Plaintiff from relying on BCBSF's alleged representations or promises to create a plan terms, and because Plaintiff did not oppose this argument. D.E. 52 at 27.[13] Yet Plaintiff still unsuccessfully attempts to plead Counts I and II as to each of these five Patients, and as to Patient S.W., whose Plan language also precludes such claims. TAC ¶¶ 40–79, 119–237, 1017–1100.

This Court also dismissed Counts I and II as to Patients J.B., E.R., A.C., V.K., and K.N.—who did not have alternative breach of contract or ERISA claims—because Plaintiff did not allege that BCBSF represented or promised anything to the Provider with respect to these five Patients, and Plaintiff did not oppose this argument. *Id.* at 25; D.E. 37 at 22 n. 20. Plaintiff now attempts to plead a breach of contract or ERISA claim as to these five Patients, without seeking leave to amend. TAC ¶¶ 277–372, 1134, 1147.

This Court held that the Counts I and II were sufficiently pleaded as to the remaining Patients, declined to dismiss Counts I and II as barred by the statute of limitations at this stage, and declined to dismiss Counts I and II as defensively preempted by ERISA. D.E. 52 at 25–35.[14]

---

[13] While this Court stated that "Counts III and IV are dismissed as to Patients S.R., D.T., R.D., N.L., and J.N.," it likely intended that "Counts I and II are dismissed as to Patients S.R., D.T., R.D., N.L., and J.N." considering: (1) the Patients' Plans (the State Plan as to S.R., D.T., R.D., N.L., and an ERISA-governed Plan as to J.N.) expressly barred Plaintiff from relying upon any alleged representation to support its negligent misrepresentation and promissory estoppel claims; and (2) the ruling's location under the analysis of Counts I and II. *See id.* at 25–27.

[14] With respect to joinder issues, this Court deferred ruling, although strongly suggesting that severance of claims/parties would be appropriate. *Id.* at 19–20. The Court explained that should this case reach a jury trial, "48 different Patients" with different plans may cause "great" prejudice. *Id.* This Court further explained that "numerous district courts have found severance appropriate in cases brought by assignee-plaintiffs on behalf of unrelated patients, seeking to recover

(5) <u>Improper Joinder of the Five Non-BCBSF Members</u>: This Court deferred ruling on whether BCBSF is improperly joined as a Defendant with respect to the five Patients who are not BCBSF members, J.A., R.I., A.C., B.F., and T.S. *Id.* at 17 n.11, 20. This Court noted that such an issue "would be more appropriately decided on a more complete record," and accepted Plaintiff's allegations that these "Patients are members and enrollees of [BCBSF]'s health insurance policy." *Id.* at 20 (citing SAC ¶ 9).

Plaintiff has failed to address various pleading deficiencies. Although Plaintiff is now in possession of each BCBSF Patient's Plan, basic and careless pleading errors—which have been brought to Plaintiff's attention on *numerous* occasions via motion practice and the Court's Order—persist. For example, with respect to three of the 47 Patients, Plaintiff still pleads inaccurate claims based on a mischaracterization of the Patients' Plans;[15] the Plan terms, which Plaintiff has been in possession of for months, preclude each claim for various reasons; and with respect to one Patient, Plaintiff fails to state any viable claim.[16] Plaintiff's TAC also fails for failure to state a claim upon which relief can be granted. Because Plaintiff has now been afforded four opportunities to plead its case, and because further amendment would be futile, dismissal with prejudice is warranted.

## <u>ARGUMENT</u>

## I.   **BCBSF IS NOT THE PROPER DEFENDANT AS TO CERTAIN PATIENTS**

Five Patients are not members of a BCBSF Plan.[17] Plaintiff has direct knowledge of this fact—it provided to BCBSF member ID cards identifying different insurers/claims administrators

---

unpaid/underpaid insurance claims." *Id.* at 18. The Court did not address BCBSF's argument that Plaintiff could not maintain this action because it is an unregistered debt collector. *Id.* at 9 n.7.

[15] First, Patient S.W. is a member of the State Plan—a non-ERISA plan—yet Plaintiff pleads an ERISA claim as to this Patient. TAC ¶¶ 199–237, 1147; Ex. A row 5; Ex. A-1; *infra* Section II.D. Second, Patient P.G. is a member of a plan sponsored by St. Lucie Public Schools—a non-ERISA plan—yet Plaintiff pleads an ERISA claim as to this Patient. TAC ¶¶ 523–41, 1147; Ex. A row 20; Ex. A-12; *infra* Section II.D. 29 U.S.C. § 1003(a), (b)(1), (b)(2) (ERISA applies to employee benefit plans established or maintained by employers and does not apply to government-sponsored plans). Third, Patient Y.F. is a member of an ERISA plan sponsored by Royal Caribbean Cruises, yet Plaintiff pleads a breach of contract claim as to this Patient. TAC ¶¶ 411–29, 1134; Ex. A row 14; Ex. A-8; *infra* Section III; *see also* D.E. 37 at 15 n.8, 30.

[16] Allegations as to Patient J.L. are not incorporated into any legal claim. *Compare* TAC ¶¶ 1101–1118, *with id.* ¶ 1119, 1125, 1134, 1147. *See also supra* note 2.

[17] These five Patients are: (1) J.A. (SAC ¶¶ 80–118); (2) R.I. (*id.* ¶¶ 238–76); (3) A.C. (*id.* ¶¶ 316–34); (4) B.F. (*id.* ¶¶ 580–98); and (5) T.S. (*id.* ¶¶ 675–93).

for certain of the Patients and/or the Patient information did not identify BCBSF at all. BCBSF has now been able to locate plan documents for three of these five Patients, J.A., B.F., and T.S. Ex. A-26; Ex. A-27; Ex. A-28. These plan documents do not reference BCBSF and only confirm that these three Patients are not members of BCBSF plans. Plaintiff, however, continues to plead that each of these Patients is a member of a BCBSF plan, and that BCBSF wrongfully denied benefits under those plans despite BCBSF not being the administrator or insurer to those plans. TAC ¶¶ 11, 12, 109, 593, 688. Indeed, Plaintiff purports to quote plan language in the TAC; however, a review of the applicable plan documents for J.A., B.F., and T.S. confirms that no such language exists. *See infra* Section II.D.  Accordingly, no viable claim exists against BCBSF as to these three Patients, and Plaintiff improperly joined BCBSF as a Defendant with respect to these Patients. Fed. R. Civ. P. 21. BCBSF therefore requests that the Court drop BCBSF as a party as to these Patients and require Plaintiff to add the appropriate Defendant(s), should the TAC otherwise survive dismissal.

## II.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM

### A.    The Plan Language Precludes Plaintiff from Relying on BCBSF's Alleged Waiver of its Right to Invoke the Anti-Assignment Provisions

Plaintiff alleges it was assigned the Providers' "bills" and, based on that allegation, purports to assert an ERISA claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) for the 27 ERISA Patients, a breach of contract claim as to the 19 non-ERISA Patients, alternative tort and equity claims for the eight Common Law Patients, and only tort and equity claims as to one Patient. Plaintiff fails to state a claim because the Plans' anti-assignment provisions bar such assignments and the Plans' "Non-Waiver of Default" provisions preclude Plaintiff from alleging that BCBSF waived its right to enforce the anti-assignment provisions. While this Court previously found that Plaintiff sufficiently alleged that BCBSF waived its right to invoke the Plans' anti-assignment provisions, its analysis was tied to *HAMOC v. Aetna* and *Beverly Oaks*; this Court did not consider whether the relevant Plan terms themselves preclude Plaintiffs' waiver allegations, as that argument was not properly before the Court at that time. D.E. 52 at 14 n.10.

"[T]o maintain an action under ERISA, a plaintiff must have standing to sue under the statute," meaning a plaintiff must have "the right to make a claim under the statute." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931, 931 n.4 (11th Cir. 2021). This type of standing is not jurisdictional, *id.*; rather, it is analyzed under Rule 12(b)(6). *Griffin v. Habitat for*

*Humanity Int'l, Inc.*, 641 F. App'x 927, 930 (11th Cir. 2016); *Surgery Ctr. of Viera, LLC v. United Launch All. LLC*, 2018 WL 922203, at *5 (M.D. Fla. Jan. 31, 2018), *R&R adopted*, 2018 WL 906773, at *1 (M.D. Fla. Feb. 15, 2018). Two categories of persons exist who can sue for benefits under an ERISA plan: plan beneficiaries and plan participants. *Physicians Multispecialty Grp. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004) (citing 29 U.S.C. § 1132(a)(1)(B)). Healthcare providers are typically not "participants" or "beneficiaries," so they lack independent standing, but they may obtain derivative standing through a written assignment from a beneficiary or participant. *Id.*; *see also Griffin*, 989 F.3d at 932. Although assignments are generally recognized, an "unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable." *Physicians Multispecialty Grp.*, 371 F.3d at 1296. "If there is an unambiguous anti-assignment provision," as here, "the healthcare provider will lack derivative standing and cannot maintain the ERISA action." *Griffin v. AT&T Servs., Inc.*, 2023 WL 8852925, at *2 (11th Cir. Dec. 21, 2023); *Surgery Ctr. of Viera, LLC v. United Launch All. LLC*, 2018 WL 922203, at *5 (M.D. Fla. Jan. 31, 2018), *R&R adopted*, 2018 WL 906773, at *1 (M.D. Fla. Feb. 15, 2018) (dismissing ERISA claims where anti-assignment provision barred assignment and plaintiff failed to adequately allege that defendant was estopped from relying on anti-assignment provision); *see also GVB MD, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2019 WL 5889200, at *2–3 (S.D. Fla. Nov. 12, 2019). Likewise, with respect to non-ERISA breach of contract claims related to healthcare plans, a plan's anti-assignment clause will bar a purported assignee's claims. *Columna, Inc. v. Cigna Health & Life Ins. Co.*, 2020 U.S. Dist. LEXIS 21611, at *13 (S.D. Fla. Feb. 6, 2020). An anti-assignment clause also will bar estoppel and tort claims related to a contract. *La Ley Recovery Sys-OB, Inc. v. United Healthcare Ins. Co.*, 193 So. 3d 16, 18 (Fla. 3d DCA 2016) (affirming dismissal of claims for negligent misrepresentation and promissory estoppel based on anti-assignment provision).

The broad anti-assignment clauses in the relevant Plans here prohibit and invalidate the alleged assignments. Clear and unambiguous anti-assignment provisions, including those in health insurance contracts, are "valid and enforceable, and will operate to void the assignment." *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 821–22 (11th Cir. 2017); *see also Physicians Multispecialty Grp.*, 371 F.3d at 1295–96 (finding anti-assignment clause to preclude provider from maintaining ERISA action to recover costs of services rendered); *GVB MD, 2019 WL 5889200*, at *2–3 (same); *Surgery Ctr. of Viera*, 2018 WL 922203, at *5 (same); *Worldwide*

*Aircraft Servs. v. Anthem Ins.*, 2022 WL 797471, at \*5 (M.D. Fla. Mar. 16, 2022) (same); *Abraham K. Kohl, D.C. v. Blue Cross & Blue Shield of Fla., Inc.*, 955 So. 2d 1140, 1143 (Fla. 4th DCA 2007) (anti-assignment provision in health insurance policy was valid and enforceable and did not violate public policy).

In this case, the relevant Plans contain broad and unambiguous anti-assignment provisions that prohibit assignment.[18] A typical provision precludes the following assignments to any provider: (1) the benefits due; (2) the right to receive payments; and (3) any "claim for damage resulting from a breach, or an alleged breach, of any promise or obligation set forth in this Booklet, or any promise or obligation set forth in any contract, plan, or policy." *E.g.*, Ex. A-4 at PRO-5; Ex. A, rows 8, 10, 11, 18, 21, 24, 27, 39, 40, 46. This clause differs from those where, for instance, only rights or benefits under the contract are unassignable. *C.f. Apex Life Grp., LLC v. Misiak*, 2008 WL 11417287, at \*2 (S.D. Fla. Jan. 9, 2008) (clause prohibiting assignment of "rights and benefits" did not encompass right to bring a claim for breach of contract). Here, the clause broadly bars any assignment of the "benefits due," the "right to receive payment," and any claim by a provider (or any purported assignee of that provider) that could arise with respect to alleged non-payment. Further, all but four of the Plans expressly prohibit assignment absent BCBSF's written consent. Ex. A, rows 7, 8, 10, 11, 13, 17, 18, 20, 21, 24, 27, 30, 33, 35–37, 39, 40, 42, 43, 46.

The anti-assignment provisions bar all claims Plaintiff purports to assert. *La Ley Recovery Sys-OB, Inc.*, 193 So. 3d at 18; *Columna*, 2020 U.S. Dist. LEXIS 21611, at \*5, \*13. Plaintiff's claims fall squarely within the scope of the applicable anti-assignment clauses. The common law claims are premised on alleged representations relating to BCBSF's obligations under the respective Plans. *See, e.g.*, TAC ¶¶ 57–58. Counts III and IV likewise turns on alleged entitlements to benefits or payments under the Plans. *Id.* ¶¶ 1146, 1159 (alleging "Providers, and now Plaintiff, are entitled to recover ERISA benefits" or other contractual amounts). These claims were, therefore, not validly assigned.

---

[18] All but one of the BCBSF Plans contain a broad anti-assignment provision. *See* Ex. A. The only BCBSF Plan that does not contain an anti-assignment provision is the State Plan. *See* Ex. A-1. This is not dispositive for members of the State Plan, as their claims are subject to dismissal for other reasons, *infra* Sections II.B, II.E. With respect to the three non-BCBSF member plans (*see* Ex. A rows 2, 23, 28), two of the Patients' plans contain broad anti-assignment provisions (*see* Ex. A rows 23 and 28), and one does not (*id.* row 2).

To side-step the controlling anti-assignment provisions, Plaintiff alleges that BCBSF has "waived or is estopped from asserting an anti-assignment provision were one even to exist." TAC ¶¶ 32, 1138, 1151. However, ***all but one of the BCBSF Plans expressly preclude the very waiver argument on which Plaintiff relies here***.[19] Ex. A. Such Plan language states:

> **Non-Waiver of Defaults**
> Any failure by us at any time, or from time to time, to enforce or to require the strict adherence to any of the terms or conditions set forth herein, shall in no event constitute a waiver of any such terms or conditions. Further, it shall not affect our right at any time to enforce or avail ourselves of any such remedies as we may be entitled to under applicable law, or this Contract.

*E.g.*, Ex. A-3 at GEN-5 (emphasis in original). An assignee cannot, therefore, as Plaintiff attempts here, treat BCBSF's alleged failure to affirmatively notify the Providers of the anti-assignment provisions as a waiver of its right to enforce those provisions in this action. Accordingly, BCBSF has not waived its right to enforce the anti-assignment provisions, and dismissal of each Patient's claims—with the exception of the State Plan Patients, whose Plan does not include a "Non-Waiver of Default" provision, and the five non-BCBSF Patients whose Plans either do not contain a "Non-Waiver of Default" provision (Ex. A rows 2, 23, 28) or whose Plans BCBSF does not possess (*id.* rows 6 & 9)—should be dismissed.

### B.     The TAC Must Be Dismissed as to the State Plan Patients

With respect to the eleven State Plan Patients,[20] Plaintiff fails to plead that the State Plan Patients, or their alleged proxies, exhausted their administrative remedies pursuant to the State Plan's stringent requirements.[21] Importantly, even if the Court finds Plaintiff sufficiently pleaded that the State Plan Patients exhausted their administrative remedies, the State Plan Patients' claims are procedurally barred by Florida Statute and not properly before this Court.

Section 12 of the State Plan mandates specific procedures for "appealing a denied claim." Ex. A-1 at 12-1–12-4. The appeal process involves a "Level I" appeal to "Florida Blue, CVS Caremark, Healthcare Bluebook, or SurgeryPlus (as appropriate), within 180 days of the adverse benefit determination notice." *Id.* at 12-1. From there, the individual can seek a "Level II" appeal

---

[19] Again, the only BCBSF Plan that does not contain this or similar language is the State Plan.

[20] Patients S.R., D.T., R.D., S.W., M.P., N.W., A.F., C.A., N.C., M.W., and N.L. *See* Ex. A rows 1, 3–5, 16, 22, 25, 32, 44, 45, 47.

[21] While this Court previously rejected BCBSF's administrative exhaustion argument at this stage, that ruling was limited to the ERISA-governed plans. D.E. 52 at 15–16.

to the Division of State Group Insurance ("DSGI"), the State "entity responsible for administering state employee benefits," within 60 days of the Level I decision. *Id.* at III, 12-2. "For requests that received (1) a Level I denial . . . and (2) a Level II denial from DSGI, two review options are available to contest the Level II Appeal denial; an Administrative Hearing and an external review from an Independent Review Organization," or "IRO." *Id.* at 12-2. An administrative hearing requires submitting, within 21 days of the Level II decision, "a petition that complies with [the] Florida Administrative Code." *Id.* at 12-3. The State Plan as a whole is "subject to . . . State of Florida laws and rules promulgated pursuant to law, including, but not limited to, Chapter 60P of the Florida Administrative Code." *Id.* at I. "[F]our months after receipt of the Level II Appeal decision," the individual can request an IRO's review. *Id.* at 12-3. "An unfavorable decision by the IRO is binding on the Plan if you did not previously timely pursue action through the administrative hearing process. If, after commencement of any administrative proceeding, you decide to request an external review by the IRO, the administrative proceeding will be held in abeyance pending the IRO decision." *Id.* at 12-4.

Nowhere in the TAC does Plaintiff allege that it complied with the administrative remedies framework expressly detailed in the State Plan—there are no allegations that the State Plan Patients, or their alleged proxies, sought administrative hearings or an IRO's review of their claims as required by the State Plan. Rather, Plaintiff alleges nothing more than spending time and "sen[ding] numerous appeal letters to Defendant" to state, in a conclusory fashion, that the State Plan Patients, or their proxies, exhausted their administrative remedies. TAC ¶¶ 37, 66–68. These conclusory allegations fall woefully short of Plaintiff's pleading obligation.

Regardless, even if the Court finds that Plaintiff sufficiently pleaded it complied with the administrative remedies framework set forth in the State Plan's appeal procedures, the State Plan Patients' claims are expressly procedurally barred by Florida Statute. Fla. Stat. § 120.68(2)(a). Section 120.68(2)(a) limits judicial review of a final agency action to the Florida District Courts of Appeal. *Id.*; *State Farm Mut. Auto. v. Gibbons*, 860 So. 2d 1050, 1052 (Fla. 5th DCA 2003) ("[O]nce administrative review is completed, the exclusive jurisdiction for judicial review is in the District Court of Appeal."). Accordingly, even accepting Plaintiff's conclusory allegations that the State Plan Patients or their proxies exhausted their administrative remedies as sufficient at the pleading stage, Plaintiff's sole remedy as to the State Plan Patients is to appeal to the relevant Florida District Court of Appeal. Fla. Stat. § 120.68(2)(a). Plaintiff's failure to file any action

relating to the State Plan Patients' final benefits decisions in the proper Florida District Court of Appeal warrants dismissal of those claims with prejudice. *Gibbons*, 860 So. 2d at 1052 ("Because Gibbons failed to pursue and exhaust her administrative remedy and failed to seek judicial review in the correct court, her complaint in the circuit court should be dismissed."); *Wilhelm v. Fla. A&M Univ. Coll. of L.*, 2007 WL 1482022 at * 2 (M.D. Fla. Mar. 7, 2007) (petition for judicial review of agency action must be filed in state court of appeal); *Titus v. Mia. Dade Cnty. Water & Sewer*, 2017 U.S. Dist. LEXIS 13063, at *2 (S.D. Fla. Jan. 31, 2017) (same). Plaintiff's claims related to the State Plan Patients are, therefore, not properly before this Court. *See* Fed. R. Civ. P. 12(b)(1).

## C.  Counts I and II Fail as to Six of the Eight Common Law Patients Because Their Health Plans Preclude Such Claims

As noted *supra* note 13, it appears this Court dismissed Counts I and II as to Patients S.R., D.T., R.D., N.L., and J.N. because language in their Plans prevents Plaintiff from relying on BCBSF's alleged representations or promises to create a plan terms, and because Plaintiff did not oppose this argument. D.E. 52 at 27.  Ignoring the relevant Plan language that bars these claims, Plaintiff still unsuccessfully attempts to plead Counts I and II as to each of these five Patients, and as to Patient S.W., whose Plan language also precludes such claims. TAC ¶¶ 40–79, 119–237, 1017–1100.

Counts I and II fail as to Patients S.R., D.T., R.D., N.L., S.W., and J.N. The State Plan, which applies to five of the Patients—Patients S.R., D.T., R.D. N.L., and S.W.—states: "Your insurance coverage is limited to the express written terms of this Benefits Document. Your coverage cannot be changed based upon statements or representations made to you by anyone, including employees of DSGI, Florida Blue, CVS Caremark, People First or your employer." TAC ¶¶ 40–79, 119–237, 1059–1100; Ex. A row 1; Ex. A-1 at III. Similarly, Patient J.N.'s Plan contains the following language: "Promissory Estoppel No oral statements, representations, or understanding by any person can change, alter, delete, add, or otherwise modify the express written terms of this Booklet." Ex. A-25 at GEN-4; Ex. A row 46; TAC ¶¶ 1017–58.

This Court dismissed Counts I and II as to Patients S.R., D.T., R.D., N.L., and J.N. on these grounds because "Plaintiff d[id] not directly respond to this argument, thereby conceding the argument."[22] D.E. 52 at 27. But Plaintiff's TAC does nothing to cure the fact that the Plan language

---

[22] Because Patient S.W. is a State Plan member with alternative tort and estoppel claims, BCBSF now makes this argument as to S.W. as well. TAC ¶¶ 199–237.

prevents it from alleging Counts I and II as to these Patients. Accordingly, Plaintiff cannot rely on BCBSF's alleged representations or promises to create a plan term that does not exist, *i.e.*, that out-of-network providers are reimbursed at the UCR rate. Counts I and II must be dismissed as to Patients S.R., D.T., R.D., N.L., S.W. and J.N.[23]

**D.** **Count IV Fails to State a Claim for ERISA Denial of Benefits Because Plaintiff Does Not Sufficiently Allege Whether the Services Provided to Each Patient Were "Covered Services" Under Each Patient's Health Plan**

"[T]o plead a cause of action under § 502(a)(1) as an assignee, [Plaintiff] must allege sufficient facts to assert a plausible conclusion that a patient listed in the [TAC] (1) was covered by an ERISA plan issued by [BCBSF] when [the Provider] provided medical services to that patient, (2) that the applicable plan provided coverage for the medical services, (3) that [Plaintiff] obtained a valid assignment of the patient's rights to receive payment under the plan, and (4) that proper payment has not been made." *Columna*, 2020 U.S. Dist. LEXIS 21611, at *5. With respect to the third element, Plaintiff fails to plead there was a valid assignment. *Supra* Section II.A.

Further, with respect to the second element, Plaintiff fails to sufficiently identify whether the benefit conferred was a "covered service" under each Patient's ERISA Plan. As this Court has recognized, "a plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question . . . [and] must provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013), *aff'd* 546 F. App'x 846 (11th Cir. 2013) (citations omitted); D.E. 52 at 23; *see also Metro. Neurosurgery v. Aetna Life Ins.*, 2023 WL 5274611, at *4 (D.N.J. Aug. 16, 2023) (dismissing ERISA denial of benefits claim where provider "d[id] not point to any Plan provision from which the Court c[ould] infer that Plaintiff was entitled to the amount of reimbursement demanded for the out-of-network . . . services" and explaining that the "disparity" between the amount billed and amount paid alone did not entitle the provider to relief).

This Court previously dismissed Count IV without prejudice "to allow Plaintiff to plausibly allege facts demonstrating that the services provided to each Patient were covered services under the Plan." D.E. 52 at 21–23. Plaintiff's TAC attempts to cure this deficiency by including

---

[23] Dismissing Counts I and II as to these six Patients would leave only two Patients with negligent misrepresentation and promissory estoppel claims, Patients J.A. and R.I. (TAC ¶¶ 80–118, 238–76), neither of whom are BCBSF plan members (*see* Ex. A rows 2 & 6; D.E. 37 at 28 n.18).

allegations about surgical procedures—*i.e.*, alleging that each ERISA Patient received a "necessary" procedure, such as a "necessary hysteroscopy" or "necessary spine procedure." *E.g.*, TAC ¶¶ 261, 549. Plaintiff does not allege with any detail *why or how* such procedures were "covered." Under the terms of each Patient's ERISA Plan, for a service to be "covered," it must be "medically necessary." *See, e.g.*, Ex. A-4 at MDN-1 ("In order for Health Care Services to be covered under this Booklet, such Services must meet all of the requirements to be a Covered Service, including being Medically Necessary, as defined by us and defined in this Booklet."); *see also* Ex. A, rows 10, 12, 13, 17, 18, 21, 23, 24, 27, 28, 30, 33, 35, 37, 39, 40, 42, 43, 46.  Each Patient's ERISA Plan's definition of "medically necessary" or "medical necessity" includes that the health care service must be: (1) in accordance with Generally Accepted Standards of Medical Practice, or widely accepted by the practitioners' peer group as efficacious and reasonably safe based upon scientific evidence; (2) clinically appropriate and considered effective for the illness, injury, disease, or symptoms; (3) not primarily for the member's convenience or the member's health care provider's convenience; and (4) not more costly than the same or similar service provided by a different provider and/or an alternative service at least as likely to produce equivalent results, or the most appropriate level of service or care which can safely be provided to the member. *See* Ex. A, rows 10, 12, 13, 17, 18, 21, 23, 24, 27, 28, 30, 33, 35, 37, 39, 40, 42, 43, 46.[24]

Plaintiff's cursory allegations that each procedure was "necessary"—without identifying a shred of additional factual detail—are insufficient to state an ERISA claim. *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 850 (11th Cir. 2013) ("We conclude that each complaint fails to state a claim under § 502(a)(1)(B) because the plaintiffs do not plead specific facts creating a plausible inference that the [procedures] were medically necessary, and thus covered benefits, for each patient in question."). Plaintiff entirely fails to allege whether the procedures were medically necessary as to each ERISA Patient. Rather, Plaintiff alleges that because each Patient's Plan "states: 'Health Care Services rendered at an Ambulatory Surgical Center are covered…,' and [Provider] is a[n] Ambulatory Surgical Center," the services were covered. *E.g.*, TAC ¶ 550. These conclusory allegations fail to account for medical necessity.[25] Said differently, because

---

[24] Some ERISA Plans require more than these criteria. *E.g.*, Ex. A rows 13, 17, 21.

[25] Further, not *every* procedure at an ambulatory surgical center is a "covered service," as Plaintiff appears to suggest. *E.g.*, Ex. A-4 at INC-3 ("Services rendered at an Ambulatory Surgical Center

Plaintiff does not allege whether each ERISA Patient's procedure meets their respective ERISA Plan's definition of medical necessity, Plaintiff fails to allege that each ERISA Patient's procedure was a "covered service" under their Plan. Without alleging that the services were "covered," meaning medically necessary, Plaintiff fails to plead that BCBSF improperly denied benefits due under the terms of each Patient's ERISA Plan by failing to pay in accordance with those Plans. Indeed, the ERISA Plan terms allegedly breached require that the service be *covered. See, e.g.*, TAC ¶ 348 ("In the case of an Out-of-Network Provider that has not entered into an agreement with Florida Blue to provide access to a discount from the billed amount of that Provider for the specific *Covered Services* provided to you, the allowed amount will be the lesser of that Provider's actual billed amount for the specific *Covered Services* or an amount established by Florida Blue that may be based on several factors, including but not limited to . . . (iv) the cost of providing the specific *Covered Services* . . .") (emphasis added). "Without . . . allegations showing how [the procedures] fall within the various definitions of 'medical necessity' incorporated by those plans . . . plaintiffs fail to state plausible ERISA benefits claims upon which relief can be granted." *Sanctuary Surgical Ctr.*, 2013 WL 149356, at *6; *see also Apex Toxicology, LLC v. United Healthcare Ins. Co.*, 2018 U.S. Dist. LEXIS 68771, at *18 (S.D. Fla. Apr. 23, 2018) *R&R adopted in part*, 2018 WL 3199250 (S.D. Fla. June 29, 2018) ("Although the Complaint does allege that Apex provided toxicology services to Defendants' subscribers . . . it fails to allege any facts that would show that the toxicology services were covered under each plan and payable for each participant. Without establishing a right to coverage for the services rendered to each participant, Apex cannot lawfully contest United's denial of payment.").

Separately, two of the purported ERISA Plans are government-sponsored plans that are not subject to ERISA. 29 U.S.C. § 1003(b)(2); Ex. A, rows 5 & 20; TAC ¶¶ 199–237, 523–41. This Court has already dismissed Count IV as to these Patients, S.W. and P.G. D.E. 52 at 23 ("Plaintiff does not address BCBSF's argument regarding the government-sponsored plans in its response. Accordingly, for this additional reason, the Court dismisses Count IV as to Patients S.W. and P.G."). Rather than address its pleading defect, Plaintiff simply reasserts the same defective claims as to these Patients. Count IV as to these Patients, S.W. and P.G., are, therefore, subject to dismissal with prejudice. *Mia. Child.'s Hosp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2009 WL 1532125,

---

*may* be covered . . .") (emphasis added). That would directly contradict every Plan's definition of "covered service," which requires that the service be medically necessary.

at *4 (S.D. Fla. May 29, 2009) ("In determining whether ERISA governs [the] plan" on a motion to dismiss, "the Court may look beyond Plaintiff's complaint."); *Fla. Pediatric Critical Care v. Vista Healthplan of S. Fla.*, 2009 WL 10667893, at *2 (S.D. Fla. Nov. 26, 2009) (same).

In addition, with respect to the three non-BCBSF members whose plans BCBSF was able to source and now attaches to the instant Amended Motion (Ex. A rows 2, 23, 28), Plaintiff fails to plead an ERISA claim because it has not identified a plan term that BCBSF allegedly violated under these plans. As to Patients J.A., B.F., and T.S., Plaintiff purports to quote their plan language and alleges that BCBSF violated what Plaintiff represents are terms of each of these Patients' ERISA plans requiring BCBSF to pay for out-of-network providers' services in a certain manner. TAC ¶¶ 109, 593, 688. These Patients' plans, however, contain no such language. Ex. A-26; Ex. A-27; Ex. A-28. Plaintiff therefore fails to "identify a specific plan term that confers the benefit in question" as to each of these three Patients, necessitating dismissal of Count IV as to Patients J.A., B.F., and T.S. *See Sanctuary Surgical Ctr.*, 2013 WL 149356, at *3.

In sum, BCBSF respectfully requests that this Court dismiss Count IV with prejudice for failure to sufficiently plead that each Patient's services were covered under their respective Plans. BCBSF further requests that this Court dismiss Count IV as to Patients S.W. and P.G. because they are not members of ERISA-governed plans. Finally, BCBSF requests that this Court dismiss Count IV as to Patients J.A., B.F., and T.S. because Plaintiff fails to identify a plan term that confers the benefit in question.

E.    **Similarly, Count III Fails to State a Claim for Breach of Contract Because Plaintiff Does Not Sufficiently Allege Whether the Services Provided to Each Patient Were "Covered Services" Under Each Patient's Health Plan**

To plead a breach of contract claim premised on a non-ERISA plan, Plaintiff must allege that: "(1) the insured had a valid non-ERISA insurance contract with [BCBSF], (2) that contract required [BCBSF] to provide coverage for the services that [the Provider] provided, (3) the insured validly assigned to [BCBSF] the right to be reimbursed for the medical expense, and (4) [BCBSF[ breached the contract by not paying the correct amount. In other words, the exact same requirements as [an ERISA claim]." *Columna*, at *12–13. With respect to the third element, Plaintiff fails to plead there was a valid assignment. *Supra* Section II.A.

Plaintiff also fails to sufficiently identify whether the benefit conferred was a "covered service" under each Patient's non-ERISA Plan. A breach of a contract claim "requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and

(3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). It is axiomatic that "when the terms of a voluntary contract are clear and unambiguous, as here, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Dea v. PH Fort Myers, LLC*, 208 So. 3d 1204, 1207 (Fla. 2d DCA 2017) (quotation omitted). And, as the purported assignee of the right to seek reimbursement under the non-ERISA Plans, Plaintiff is bound by the terms of the non-ERISA Plans. *See, e.g.*, *Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 206 (Fla. 5th DCA 2007) ("Following an assignment, the assignee 'stands in the shoes of the assignor.'"); TAC ¶¶ 5–7, 31, 1137.

As with Count IV, Plaintiff has failed to plead that each non-ERISA Patient received a "covered service" under the terms of that Patient's non-ERISA Plan. As to all but three non-ERISA Patients, the TAC includes allegations about surgical procedures—*i.e.*, alleging that each non-ERISA Patient received a "necessary" procedure, such as a "necessary breast reduction" or a "necessary hysteroscopy." *E.g.*, TAC ¶¶ 285, 834. Plaintiff does not allege with any detail *why or how* such procedures were "covered." With respect to non-ERISA Patients S.R., D.T., and R.D., Plaintiff does not include *any* allegations about the type of procedure/service allegedly rendered. TAC ¶¶ 40–79, 119–58, 159–98.

Under the terms of each Patient's non-ERISA Plan, for a service to be "covered," it must be "medically necessary." *See, e.g.*, Ex. A-1 at IV ("In order to be covered under this Plan Document, the service, prescription drug, or supply must meet all of the requirements of a Covered Service and Supply, including being Medically Necessary, as defined by this Plan Document."); *see also* Ex. A, rows 1, 7, 8, 11, 14, 15, 36. Each Patient's non-ERISA Plan's definition of "medically necessary" or "medical necessity" includes that the health care service must be: (1) in accordance with standards of good medical practice or with Generally Accepted Standards of Medical Practice; (2) clinically appropriate and considered effective for the illness, injury or disease; (3) not primarily for the member's convenience or the member's health care provider's convenience; and (4) not more costly than the same or similar service provided by a different provider and/or an alternative service at least as likely to produce equivalent results, or the most appropriate level of service or care which can safely be provided to the member. Ex. A, rows 1, 7, 8, 11, 14, 15, 36.  Without alleging that the services were "covered," meaning medically necessary, Plaintiff fails to plead that BCBSF breached a term of the non-ERISA Plans by failing to pay in

accordance with those Plans. Indeed, the contract terms allegedly breached require that the service be *covered. See, e.g.*, TAC ¶ 291 ("In the case of an Out-of-Network Provider that has not entered into an agreement with Florida Blue to provide access to a discount from the billed amount of that Provider for the specific *Covered Services* provided to you, the allowed amount will be the lesser of that Provider's actual billed amount for the specific *Covered Services* or an amount established by Florida Blue that may be based on several factors, including but not limited to: . . . (iv) the cost of providing the specific *Covered Services* . . .") (emphasis added). Because Plaintiff fails to plead the necessary elements to establish coverage under the non-ERISA Plans—and therefore an obligation for BCBSF to pay for the alleged services—Plaintiff fails to state a claim for breach of contract. BCBSF respectfully requests that this Court dismiss Count III with prejudice for failure to sufficiently plead that each Patient's services were covered under their respective Plans.

**III.    COUNT III IS DEFENSIVELY PREEMPTED BY ERISA AS TO PATIENT Y.F.**

Patient Y.F. is a member of an ERISA-governed Plan, yet Plaintiff pleads a breach of contract claim as to this Patient. Ex. A, row 14; TAC ¶¶ 411–29, 1134. BCBSF raised this issue in its previous Motion to Dismiss. D.E. 37 at 6 n.8, 30 ("Patient Y.F. is a member of an ERISA plan sponsored by Royal Caribbean Cruises, yet Plaintiff pleads a breach of contract claim as to this Patient."); D.E. 37-1 at 6.[26] Plaintiff did not respond to this issue. *See* D.E. 41.

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in" ERISA. 29 U.S.C. § 1144(a). Defensive preemption bars a claim when a plaintiff "seek[s] relief under state-law causes of action that 'relate to' an ERISA plan." *Johnson v. Unum Provident*, 363 F. App'x 1, 3 (11th Cir. 2009) (citation omitted). Where, for instance, the state law claim is "based on [a] Plan subject to ERISA" and requires the Court to "consider the terms of the Plan and the parties' rights under it—was it breached, was [the beneficiary] entitled to coverage under its terms, does the Plan entitle [provider] to compensation," the claims "relate[] to" the plan and are preempted. *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, 2020 WL 4227428, at *4 (M.D. Fla. July 23, 2020) (dismissing claim). That is precisely the case here. Patient Y.F.'s Plan is subject to ERISA and necessarily requires the Court to consider the terms of the ERISA Plan in evaluating Plaintiff's breach of contract claim. Accordingly, Count III should be dismissed as preempted as to Patient Y.F.

---

[26] The Court did not issue a ruling with respect to Count III or Patient Y.F. *See* D.E. 52 at 33–35.

IV.    **COUNTS III AND IV FAIL AS TO PATIENTS J.B., E.R., A.C., V.K., AND K.N. BECAUSE PLAINTIFF DID NOT SEEK LEAVE TO AMEND THESE PATIENTS' CLAIMS**

This Court previously dismissed Counts I and II as to Patients J.B., E.R., A.C., V.K., and K.N., who did not plead alternative breach of contract or ERISA claims in the Second Amended Complaint. D.E. 52 at 25; D.E. 37 at 22 n. 20. Plaintiff now attempts to plead entirely different claims, for breach of contract or ERISA as to these five Patients, without seeking leave to do so. TAC ¶¶ 277–372, 1134, 1147. While this Court permitted "Plaintiff [to] file a Third Amended Complaint consistent with [the Court's] Order," nowhere in the Order did the Court dismiss these five Patient's claims with leave for Plaintiff to bring entirely different claims. D.E. 52 at 25, 36; Fed. R. Civ. P. 15(a)(2) ("A party may amend its pleading only with the opposing party's written consent or the court's leave."); S.D. Fla. L.R. 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment to the motion . . . . Any amendment to a pleading, whether filed as a matter of course or upon a successful motion to amend, must, except by leave of Court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."). Here, Plaintiff did not move to amend its pleading and did not the Court or BCBSF with its proposed TAC. Accordingly, Count III should be dismissed as to Patients J.B., E.R., and K.N., and Count IV should be dismissed as to Patients A.C. and V.K.

## <u>CONCLUSION</u>

For the foregoing reasons, BCBSF respectfully requests that the Court enter an Order granting this Motion and dismissing Plaintiff's TAC with prejudice.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF CONFERRAL

On October 2, 2024, prior to the filing of its initial Motion to Dismiss the TAC, BCBSF's counsel attempted, via email, to confer with Plaintiff's counsel regarding the relief pursuant to Federal Rule of Civil Procedure 12(b)(1) sought in this Motion in a good faith effort to resolve such issues raised in this Motion. On October 6, 2024, Plaintiff's counsel responded that Plaintiff would "take a look at" BCBSF's Rule 12(b)(1) argument "soon and respond in the normal course." BCBSF's Rule 12(b)(1) argument has not been amended as of its original October 2, 2024 filing, and to date, Plaintiff's counsel has not provided HAMOC's position.

Dated: October 29, 2024

Respectfully submitted,

**DLA PIPER LLP (US)**

By:      */s/ Ardith Bronson*
Ardith Bronson (FBN 423025)
ardith.bronson@dlapiper.com
Jody A. Stafford (FBN 1015797)
jody.stafford@dlapiper.com
Jose M. Espinosa (FBN 1030890)
jose.espinosa@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8562

***Counsel for Defendant***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of October, 2024, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

*/s/ Ardith Bronson*
Ardith Bronson, Esq.
